| | |
|---|---|
| Your Name: | Rona Young |
| Address: | 131 Royal Crest Drive, Columbia, SC 29229 |
| Phone Number: | (803) 542-3050 |
| Fax Number: | (803) 401-5829 |
| E-mail Address: | youngideals.rona@gmail.com |

Pro Se Plaintiff

**FILED**

DEC - 5 2014  *KC*

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

*NP*

⑤

## United States District Court

### Northern District of California

C14- 5351   *CRB*

| | |
|---|---|
| Rona Young | Case Number:*[leave blank]* |
| | |
| Plaintiff(s), | **COMPLAINT** |
| vs. | |
| Peralta Community College District | |
| Dr. Robert Adams, PCCD | DEMAND FOR JURY TRIAL |
| Gregory Vallentine, PCCD | Yes ■   No ☐ |
| York Risk Services Group, Arthur London | |
| Defendant(s). | |

1. **Parties in this Complaint**

   a. **Plaintiff(s).** *Write your name, address, and phone number. If there are other plaintiffs, use more pages to include their names, addresses, and phone numbers.*

Name: Rona Young

Address: 131 Royal Crest Drive

Columbia, SC 29229

Phone number: (803) 542-3050 c, (803) 401-5829 h/f

COMPLAINT
PAGE 1 OF 12 [JDC TEMPLATE]

*rev: 6/2013*

1       **b. Defendant(s).** *Write the full name and address of every defendant. If the defendant is*

2 *a corporation, write the state where it is incorporated and the state where it has its main place of*

3 *business. Use more pages if you need to.*

4 **Defendant 1:**

5 Name: Peralta Community College District

6 Address: 333 E. Eighth Street, Oakland, CA 94606

7 _____

8 **Defendant 2:**

9 Name: Dr. Robert Adams

10 Address: Address unknown at this time C/O Peralta CCD

11 333 E. Eighth Street, Oakaland, CA 94606

12 **Defendant 3:**

13 Name: Gregory Valentine, Risk Manager, Peralta CCD

14 Address: 333 E. Eighth Street, Oakland, CA 94606

15 _____

16 **Defendant 4:**

17 Name: Arthur London, York Risk Services Group

18 Address: P.O. Box 619079, Roseville, CA 95661

19 _____

20       **2. Jurisdiction**

21       *Usually, only two types of cases can be filed in federal court: cases involving "federal*

22 *questions" and cases involving "diversity of citizenship." Check at least one box.*

23 ☑      My case belongs in federal court under <u>federal question jurisdiction</u> because it is

24 about federal law(s) or right(s).

25 *Which law(s) or right(s) are involved?* ADA and ADEA, disabilty and failure to accommodate, T

26 Title VII of the Civil Rights Act of 1964

27 ☐      My case belongs in federal court under <u>diversity jurisdiction</u> because none of the plaintiffs

28 live in the same state as any of the defendants <u>AND</u> the amount of damages is more than $75,000.

COMPLAINT
PAGE 2 OF 12 [JDC TEMPLATE]

*rev: 6/2013*

1

2      3.  **Venue**

3          *This Court can hear cases arising out of Alameda, Contra Costa, Del Norte, Humboldt,*

4      *Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco,*

5      *San Mateo, and Sonoma counties. This is the right court to file your lawsuit if 1) All defendants*

6      *live in California AND at least one of the defendants lives in this district; OR 2) A substantial*

7      *part of the events you are suing about happened in this district; OR 3) A substantial part of the*

8      *property that you are suing about is located in this district; OR 4) You are suing the U.S.*

9      *government or a federal agency or official in their official capacities and you live in this district.*

10     *Explain why this district court is the proper location to file your lawsuit.*

11         Venue is appropriate in this Court because   a substantial part of the events that I am suing

12     happened in this Distict.

13     

14     4.  **Intradistrict Assignment**

15         *There are three divisions of this Court: San Francisco/Oakland, San Jose, and Eureka.*

16     *The San Francisco/Oakland division covers Alameda, Contra Costa, Marin, Napa, San*

17     *Francisco, San Mateo, and Sonoma counties. The San Jose division covers Monterey, San*

18     *Benito, Santa Clara, Santa Cruz counties. The Eureka division covers Del Norte, Humboldt,*

19     *Lake, Mendocino counties, only if all parties consent to a magistrate judge. Explain which*

20     *division your case should be assigned.*

21         This lawsuit should be assigned to [*Select one: San Francisco/Oakland, San Jose, OR*

22     *Eureka*] Division of this Court because   San Francisco/Oakland because the events of this case

23     occurred in Oakland

24     

25     5.  **Statement of Facts and Claims**

26         *Write a short and simple description of the <u>facts</u> of your case. Include WHERE and*

27     *WHEN the events happened, WHO was involved, WHAT role each defendant played, and HOW*

28     *you were harmed. If you know which laws or rights the defendant violated, you can include them,*

       *but you do not need to make legal arguments. Put each fact or claim into a separate, numbered*

COMPLAINT
PAGE  3   OF  12  [JDC TEMPLATE]

                                                                                    rev: 6/2013

*paragraph, starting with 5a, 5b, and so on. Attach additional sheets of paper as necessary. You*
*may attach documents that support your claims to the end of this Complaint as exhibits. Explain*
*what each exhibit is, when and how you got it, and how it supports your claims. Attaching a*
*document to your Complaint does not necessarily mean that it will be accepted as evidence.*

I, Rona Young was denied reasonable accommodations on at least two occassions after
sustaining a work-related injury at Merritt College, a college within the four-college Peralta
Community College District (PCCD) in Oakland, California. The injury occurred on
August 25, 2009 while I was a member of the SEIU hired in the position of Public Information
Officer for Merritt College. I was hired in 1994 with the PCCD as a Staff Marketing Specialist
then promoted to the Public Information Officer at Merritt College in 1995 where I performed
duties and responsibilities until January 14, 2010. The injury that occurred on August 25, 2009
resulted in total knee arthroscopy (replacement) on May 4, 2010. On May 4, 2010, prior to
the replacement surgery, I requested that the surgeon, Dr. Thomas Peatman's surgical staff at
Alta Bates Summit Medical Center send a medical status report by facsimile to my supervisor
at Merritt College: Dr. Robert Adams, President to inform him that my post-operative recovery
could be up to three to four months with re-evaluation intervals determined by the attending
physician/surgeon, Dr. Peatman. The most egregious discriminatory act took place three days
after Dr. Adams received the facsimile that stated that I would not return to work for an
undetermined time (Exhibit A). He contacted me by telephone three days after surgery to inform
me that he had decided to eliminate my position as Public Informaiton Officer at Merritt College
and I would transfer to Laney College. He further stated that he did not want me to hear this
alarming news from any of our colleagues. At the time of his telephone call, my son, Fate
Douglas Burnham Young and my sister (care-giver), Cynthia Young were by my bedside and
could not believe that disregard for my health that Dr. Adams exhibited.

From August 25, 2009 until January 14, 2010, Dr. Adams and I agreed after he had conferred
with the Chancellor, Ehilu Harris that I could work from home and come onto campus on the
days we had management or college meetings and/or activities to maintain the workflow of the
Office of Public Information. As my condition worsened and walking was extremely difficult

COMPLAINT
PAGE 4 OF 12 [JDC TEMPLATE]

rev: 6/2013

1  to walk, Dr. Jacob Rosenberg, my predesignated Workers Compensation physician responded

2  to Dr. Adams's request that I get a wheelchair to use when i was on campus.

3  On December 5, 2009, Dr. Rosenberg submitted a request for use of a wheelchair on campus

4  which was approved by YORK Risk Services Group's (YORK) Utilization Review Peer Appeal

5  Committee on January 29, 2010 (Exhibit B). YORK is the Work Comp carrier for

6  PCCD. Dr. Rosenberg was diligent in assisting me in my endeavor to continue gainful

7  employment in spite of my disability and the ensuing delay for treatment from August 25, 2009.

8  The first acts of discriminatory practices began under the direction of PCCD Risk Manager,

9  Gregory Valentine, Human Resources Director, Karen Ulrich, Esq., and Dr. Robert Adams,

10  President, Merritt College when a wheelchair accommodation was denied.

11  Dr. Adams, Mr. Valentine and Ms. Ulrich decided that they would not accommodate the use of a

12  wheelchair citing it was hazardous. The PCCD four-colleges and District  had employees and

13  students in large numbers that were disabled and wheelchair bound. This was another instance

14  that led to discriminatory practices against an ADA protections. I was aware of one other Merritt

15  College Classified Staff, Noreen Gillham, who was allowed to use a wheelchair after knee

16  surgery.  I was told that I would receive my salary and had to wait until I reached Maximun

17  Medical Improvement (MMI) after my medical consultation to determine what pocedures would

18  remedy my right knee injury.

19  Following the total knee arthroscopy on May 4, 2010, PCCD eliminated my position on

20  May 25, 2010 citing that the position allocation were affested by lack of funds. The Laney

21  College Public Information Officer (PIO), Liza Chan's position was also eliminated after

22  Dr. Adams had informed me that I would bump the next person in senority which would have

23  been Laney College. I was informed by the PCCD Marketing Director  that Laney College

24  President Dr. Elnora Webb did not want to work with me due to my history of injuries and

25  need for accommodations and decided to eliminate the position. Dr. Webb attempted to bring

26  Ms. Chan back to Laney College to perform the duties and responsibilities of a Public

27  Information Officer but the SEIU Union Representatives did not allow this deception to occur.

28  When the positions at Merritt College and Laney College were eliminated, PCCD offered a

COMPLAINT
PAGE 5 OF 12 [JDC TEMPLATE]

rev: 6/2013

1  me the PIO position at College of Alameda which would bump the current PIO, Shirleen

2  Schmerhorm. If I did not elect to transfer to College of Alameda, I would loss my position or be

3  placed on a 39-month rehire list (Exhibit C, D).

4  I am a member of a protected group under the American with Disabilities Act and Title VII of

5  the Civil Rights Act, as well as a member of the SEIU Local 1020, so I  contacted the SEIU

6  Local 1021 leadership  on May 9, 2010 after being released from the hospital (surgery was May

7  4, 2010)  inform them that on May 7, 2009 that Dr. Adams contacted me by telephone to inform

8  me that he was had eliminated my position and that I should contact David Betts at Human

9  Resources (Exhibit E). Our Union President, Diana Lara contacted Tim West, SEIU

10  Representative to inquire with the Union's attorney to see if it is illegal to eliminate/layoff an

11  employee while he/she is out on a worker's compensation injury. Mr. West contacted me and

12  informed me that I should contact the Department of Fair Housing and Employment (DFEH) and

13  U.S. Equal Employment Opportunity Commission (EEOC) (Exhibit F). I filed the DHEF

14  Complaint  with a charge of Employment Discrimination on May 16, 2011. The DFEH case file

15  was forwarded to EEOC on June 6, 2012, because of a formal agreement between the state

16  agency and the U.S. Equal Employment Opportunity Commission. The state agency waived

17  jurisdiction and requested that EEOC process the complaint as there are state and federal issues

18  and the statute of limitations for DFEH had  come up.   EEOC did  not begin  to review  my

19  complaint of employment discrimination until 2014. They issued a right to sue based on the

20  charges for which I file my Complaint in the U.S. Northern District Court.

21  As soon as I received the Dismissal and Notice of Rights, I contacted the Special Investigator,

22  Malinda K. Tuazon, Esq. (Investigator Tuazon) to determine how to obtain the discovery.

23  (Exhibit G) The Freedom of Information Act was not fulfilled until November and I was unable

24  to obtain an attorney to represent me citing that there was not enough time to review documents

25  and prepare a Complaint (Exhibit H).. Investigator Tuazon issued the Dismissal and Notice of

26  Right without allowing me time to obtain information from Dr. Peatman to  clarify his

27  Permanent and Stationery Report. However, Dr. Jamasbi, the Workers Compensation Board's

28  Qualified Medical Examiner states that I was not Permanent and Stationery (Exhibit I). And, did

COMPLAINT

PAGE NO. 6  OF 12   [JDC TEMPLATE]

1  not agree that I should have been without care and had not reached Maximum Medical

2  Improvement.

3   As a member of a protected group under ADEA, I was 52 years old when I was injured  and

4  believe that Dr. Adams and Peralta Community College District eliminated my position because

5  I had suffered multiple bodily injuries over the fifteen years I was working at the District and

6  Merritt College. My initial injury in 1994 resulted from stepping out of my vehicle in the

7  unpaved parking lot at the Admissions and Records portable during rain. As I placed my leg

8  down, there was a puddle of water covering the deep hole that damaged my right knee. I had two

9  surgeries but the knee was never the same and the condition worsened over the year. In 1999, I

10  underwent bi-lateral carpal tunnel release surgery to relieve pain due to repetitive use of

11  computers. I injured my back at a community event lifting boxes of catalogues and tables in

12  2003. While awaiting approval from the workers compensation carrier (Carrier), my left leg

13  sciatica worsened causing the collapse of my left leg resulting in a fractured ankle. The Carrier

14  approved the claim and I had four surgeries to correct my ankle. In 2007, the left carpal tunnel

15  release worsened and moved into my ulnar nerve which had to be transposed  in 2008 and Dr.

16  Adams would not allow me to return to work without the SEIU intervention (Exhibit J). The

17  surgery was in 2008 and he had warned me that if I became sick or injured again that he would

18  replace me. He threatened me  following liver resection in May 2007. He joined Merritt College

19  in July 2007 and at that time, I was recovering from the liver resection (Exhibit K).   The

20  difficulties began with Dr. Adams who knew that I was capable of the duties and responsibilities

21  of my job. The performance evaluation of 2009 was exemplary (Exhibit L). Dr. Adams

22  eliminated my position when I hurt my knee, back and upper extremity on August 25, 2009

23  while sitting down on a chair that had been place under my desk in my old office. Charlotte

24  Victorian, a Classified Staff in the Business Office was talking to me as I sat down and she had

25  to help me get out from under the desk.  I immediately called Dr. Adams office to let him know

26  that I had fallen and if he could come downstairs. He lamented, "This is a set-up!" I asked him

27  "Why do you think anyone would want to hurt me?" He did not respond but agreed that I should

28  go to the doctor. I did and from August 25, 2009 until January 14, 2010, I worked from home

COMPLAINT

PAGE NO. 7 OF 12  [JDC TEMPLATE]

1   and in the office until January 14, 2010. It was at that time that I tried to seek medical care and

2   treatment until the right knee arthroscopy. I feel very strongly that Dr. Adams eliminated my

3   position because of previous injuries even though he knew that I was a disabled worker and

4   furthermore to stop me from being able to have lifetime medical. I was grandfathered into a

5   Union clause to receive lifetime medical benefits. Because I was vested over ten years and 50

6   years old already, PCCD would have to retire with lifetime medical. I contend that eliminating

7   my position was a veiled attempt to deny me the right to lifetime medical and the ability to retire

8   in fifteen years at 67 years of age. When PCCD would not grant me accommodations my

9   concern was for the what my future would hold for my son and me. I had to be able to receive

10   medical care and prepare for his future and find gainful employment unless PCCD would

11   reconsider the denial of accommodations.

12   I found out from EEOC that the Risk Manager, Gregory Valentine had contacted College of

13   Alameda President, Dr. Jannett Jackson on August 31, 2010 and to inform her that he had made

14   an agreement to offer accommodations to me. However, this information was never conveyed to

15   my physician, Dr. Peatman, the SEIU Local 1021 leadership, or me. He stated in the email to Dr.

16   Jackson, the following: "First, I'd like to thank you for your time and attention today. I have the

17   following suggestions for an action plan concerning the return of your PIO, Rona Young. Please

18   contact Ms. Young and inform her that our decision to accommodate her ability to work four (4)

19   hours per day as outlined by her doctor is predicated on her ability to use a wheelchair during her

20   four hours.

21   If she is agreeable to using a motorized wheelchair, we will need clearance from her doctor to

22   use the chair which means she will need to be mobile during her four (4) hours/day. If she or her

23   doctor does not agree to the use of the chair, then we will let her remain on Temporary Total

24   Disability as we cannot accommodate her for four (4) hours/day with a 100% stationery

25   position.

26   Once we have all approvals, Ms. Young's and her doctor's, we will begin the process to secure

27   the wheelchair, bring her chair over from Merritt, and schedule her Return-to-Work date. Thanks

28   Greg Valentine, dated 08/31/2010." This communication was never conveyed to me or my

COMPLAINT

PAGE NO. 8 OF 12 [JDC TEMPLATE]

1  physician up to and including the day of my retirement on November 10, 2010.     This act was
2  very harmful  and the only communication that I had with Ms. Jackson was to welcome me to
3  the college ensuring me that the transfer paperwork would be completed after I transferred there
4  on paper. I never worked at the College of Alameda and was never informed of this
5  memorandum until I received it on November 3, 2014 in a FOIA request from the EEOC
6  (Exhibit M).
7   When I was not offered accommodations and the physician did not receive any correspondence
8  after repeated inquires to Gregory Valentine, it was recommended to me by the Union that I
9  protect myself. If the physician submitted a Permanent and Stationery Report and PCCD did not
10 accommodate me, I would lose the right to lifetime medical benefits for which I had worked for
11 over 15 years.  This represents a decision made under duress because I was constructively
12 terminated and if Mr. Valentine or Dr. Jackson would have informed me or Dr. Peatman that
13 they had a plan of action between August 31, 2010 through November 10, 2010, I would have
14 continued my tenure at PCCD. I contend that not notifying me after repeated emails and calls
15 from me and the Union, Mr. Valentine intentionally withheld inform that was the determining
16 factor in whether I would retire or not. The PCCD and Union contract hires an employee for a
17 given classification/ position and PCCD does not retrain you for another Union position
18 following and injury. Therefore, if they did not accommodate me, I would lose my benefits.  I
19 was forced to retire to protect my family.  This violates my civil rights and my rights as an
20 injured and disabled worker. I pray that the District Court will hear my Complaint and judge in
21 my favor as I have been harmed.
22
23
24
25
26
27
28

COMPLAINT

PAGE NO. 9  OF 12  [JDC TEMPLATE]

1    Statement of Claims

2    I became a member of a protected class when I had the injuries beginning in 1994, 2003, 2007,

3    and 2009 that were all Workers Compensation approved cases and fell under the jurisdiction of

4    the Workers Compensation Board. I am disabled; however, I am and was always qualified to

5    perform the duties and responsibilities of the position of Public Information Officer at Merritt

6    College or College of Alameda. I can still perform the essential functions of this position with or

7    without a wheelchair after recovering from the total knee arthroscopy. I had performed the duties

8    and responsibilities for over fifteen (15) year under the leadership of five (5) different presidents:

9    Dr. Wise Allen, Dr. George Herring, Dr. George Yee, Dr. Evelyn Wesley, and Dr. Robert

10   Adams.

11   When Dr. Adams was hired to work at Merritt College, I was recovering from liver resection

12   because my oncologist believed that cancer had metastasized to my liver. I contacted Dr. George

13   Herring who was the Interim President to return to work part-time in order to make sure that Dr.

14   Adams' transition was smooth given that I reported directly to the  college President.  It was at

15   that time that he began to threaten me about medical illness or injuries stating that he'd replace

16   me if I became ill again. Within a year, I had to have ulnar nerve transposition on my left arm

17   which was a work-related injury. He did hire a temporary PIO and when Dr. Schwartz attempted

18   to have me return to modified duty, Dr. Adams would not allow me to return to work until the

19   Union intervened.  The relationship from that point on was good yet he had shown that he had

20   begun the process of trying to eliminate me. I continued to work diligently and received an

21   exemplary review. Then when I hurt my knee, he made good on his promise to eliminate me.

22   I suffered an adverse employment discrimination action by Mr. Adams and Mr. Valentine

23   because of my many injuries (Exhibit N). My colleague Shirley Fogarino (PIO at Berkeley City

24   College), who held the highest seniority as a  PIO was not treated the manner in which I was

25   when she sustained a disability. My other college Noreen Gillham at Merritt College had knee

26   surgery and was granted the use of a wheelchair to perform her duties in the Library. They were

27   treated better than me.

28   I requested accommodations and was never given notice that they would be granted over from

COMPLAINT

PAGE NO. 10 OF 12   [JDC TEMPLATE]

1    August 31, 2010 until November 10, 2010, to date.

2     It is my greatest hope and prayer that the District Court will read my Complaint and its Exhibits.

3    This has been an unbearable, sad time since I left Merritt College. I was not afforded the

4    opportunity to remove my personal effects from my office nor say goodbye to my colleagues

5    with the honor and dignity with which I had served the Oakland, Alameda, Emeryville, and

6    Berkeley communities. I remain a member of protected groups that should not be discriminated

7    against without repercussions. My life is not the same emotionally and physically. My   son   is

8    now 16 years old and often asks me why Dr. Adams hurt me this way.  I still believe that the

9    PCCD was trying to make sure that I did not have access to the lifetime medical benefits for

10   which I had worked and knew that I would be harmed.  I am representing myself only because

11   the attorneys that I approached to represent me said that the EEOC held onto my file for too long

12   and that they did not have enough time to review discovery since the EEOC FOIA department

13   did not provide the Discovery until two months after it was requested.

14    I am a citizen that wants justice for a grave disserve to me and my son.

COMPLAINT

PAGE NO. 11  OF 12   [JDC TEMPLATE]

6. **Demand for Relief**

*State what you want the Court to do for you. For example, depending on which claims you raise, it may be appropriate to ask the Court to award you money or order the defendant to do something or stop doing something. If you are asking for money, you can say how much you are asking for and why you should get that amount.*

My remedy computation is based on my constructive termination denying me the right to work until the legal retirement of 67. The monetary damages totaled $1,045,008.00 which does not include the annual cost-of-living increases. I was forced to retire when I was not offered ADA accommodations. I am a single parent raising a 16 year old. I request monetary damages for 15 years of wages from my actual to my intended retirement at $5,805.60 per month earnings which equates to $1,045,008.00. The punitive damages caused by the mental anguish and personal hardship has not been valuated yet this should be awarded as well. I also want to seal my files and have an order in place whereas Peralta Community College District and its agents cannot disclose information about this lawsuit or harm me in any way in the future to protect my ADA rights and no longer defame me.

7. **Demand for Jury Trial**

*Check this box if you want your case to be decided by a jury, instead of a judge.*

☑    Plaintiff demands a jury trial on all issues.

*All plaintiffs must sign, date, and print their names at the end of the Complaint. Attach another page if you need to.*

Respectfully submitted,

Date: 12/03/14          Sign Name: _Rona Young_

                        Print Name: Rona Young

COMPLAINT
PAGE 12 OF 12 [JDC TEMPLATE]

rev: 6/2013