# EXHIBIT A

# WEBSTER ORTHOPAEDIC MEDICAL GROUP

☐ 80 Grand Ave, #400  Oakland, California 94612  (510) 238-1200
☐ 5801 Norris Canyon Road, #210  San Ramon, California 94583  (925) 355-7350

COPY

## WORK / SCHOOL STATUS REPORT

Patients Name  Rona Young                                Date  4/29/2010

Employer / School  Peralta Community College District
Date of Injury  8/25/2009
Current Diagnosis  715.16   OSTEOARTHROSIS LOCALIZED PRIMARY INVOLVING LOWER LEG

### TODAY'S TREATMENT

Other services prescribed by Attending Physician (indicate all applicable):
 a.  No other services authorized
 b.  Services ordered:  ☐ MRI   ☐ EMG   ☐ BONESCAN
 c.  Physical Therapy:  ☐ YES   ☐ No
 d.  Other services:

### WORK/ACTIVITY STATUS

1. Patient may return to full duty/activities with no restrictions on:
2. Patient may return to work/activities with:
   ☐ limitations  ☐ light/modified duty/activities  Date:
   Number of hours per day:
   Typing limited to ___ hrs.        Lifting limited to _____ lbs.
   Limited:  ☐ Twisting    ☐ Bending    ☐ Stooping       ☐ Kneeling
             ☐ Pinching    ☐ Climbing   ☐ Pulling        ☐ Grasping
             ☐ Walking     ☐ Standing   ☐ Overhead work
             ☐ Other limitaitons
3. Patient is temporarily disabled until:    Date:
4. Next Appointment:

### SPECIAL INSTRUCTIONS

Due to upcoming knee surgery Ms Young will be out of work until she has completed her post operative recovery. This may be up to 3-4 months after surgery up to 9/2010. We will reevaluate at intervals as indicated.

Signature:
State License No:  C27264                    Date:  4/29/2010

P. 1

* * * COMMUNICATION RESULT REPORT ( MAY. 4. 2010   9:31AM ) * * *

FAX HEADER:   SAME DAY SURGERY

TRANSMITTED/STORED : MAY. 4. 2010   9:30AM

| FILE MODE | OPTION | ADDRESS | RESULT | PAGE |
|---|---|---|---|---|
| MEMORY TX | | 94667280 | OK | 1/1 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL          E-2) BUSY
E-3) NO ANSWER                     E-4) NO FACSIMILE CONNECTION

# WEBSTER ORTHOPAEDIC MEDICAL GROUP

☐ 80 Grand Ave. #400  Oakland, California 94612  (610) 238-1200
☐ 5801 Norris Canyon Road, #210  San Ramon, California 94583  (925) 355-7350

## WORK / SCHOOL STATUS REPORT

Patient's Name  Rona Young                    Date  4/29/2010

Employer / School  Peralta Community College District
Date of Injury  8/25/2009
Current Diagnosis  715.16  OSTEOARTHROSIS LOCALIZED PRIMARY INVOLVING LOWER LEG

### TODAY'S TREATMENT
Other services prescribed by Attending Physician (Indicate all applicable):
  a.  No other services authorized
  b.  Services ordered:          ☐ MRI      ☐ EMG      ☐ BONESCAN
  c.  Physical Therapy:          ☐ YES      ☐ No
  d.  Other services:

### WORK/ACTIVITY STATUS
1.  Patient may return to full duty/activities with no restrictions on:
2.  Patient may return to work/activities with:
        ☐ limitations  ☐ light/modified duty/activities  Date:
    Number of hours per day:
        Typing limited to ___ hrs.        Lifting limited to ___ lbs.
    Limited:    ☐ Twisting      ☐ Bending      ☐ Stooping      ☐ Kneeling
                ☐ Pinching      ☐ Climbing     ☐ Pulling       ☐ Grasping
                ☐ Walking       ☐ Standing     ☐ Overhead work
                ☐ Other limitaitons
3.  Patient is temporarily disabled until:        Date:
4.  Next Appointment:

### SPECIAL INSTRUCTIONS
        Due to upcoming knee surgery Ms Young will be out of work until she has completed her post operative recovery. This may be up to 3-4 months after surgery up to 9/2010. We will reevaluate at intervals as indicated.

Signature:
State License No:  C27264              Date:  4/29/2010

# EXHIBIT B

**IPM MEDICAL GROUP, INC.**

Jacob Rosenberg, M.D., Q.M.E.
Lawrence Well, M.D., Q.M.E.
Kasra Amirdelfan, M.D., Q.M.E.
Douglas Grant, M.D., Q.M.E.
Kenneth Kim, M.D., Q.M.E.
Howard Rome, Ph.D., Q.M.E.
Jeff Chen, M.D.
Neesha Davé, D.O.

450 North Wiget Lane, Walnut Creek, CA 94598  •  Telephone: (925)691-9806  •  Fax: (925)691-9807

10/29/2009

Re: Rona  Young

Insurance: SCRMA Risk Mgt Upland
Claim #:     04-9200-0035
DOI:           12/17/2003

To Whom it May Concern:

Due to her medical condition to maintain her work, she will need provisions for a motor-powered wheelchair or provisions for her to work from home.

This is intended to be a temporary situation due to delay in care from her insurance carrier.
This is not a reflection on the patient herself or her ability to complete work tasks.

"I declare under penalty of perjury that the information accurately described the information provided to me and except as noted herein that I believe it to be true.  I further declare under penalty of perjury that I have not violated the provisions of California Labor Code Section 139.3 with regard to the evaluation of this patient, the preparation of the report or the dictation of any procedure."

Sincerely,

Kenneth Kim, MD

1                              Patient:Rona  Young

1/29/2010

Jacob A. Rosenberg, M.D.
450 N. Wiget Ln.
Walnut Creek, CA  94598

Re: Employee: Rona  Young
    Employer: Peralta Community College District
    Claim No: PCCD-000327
    D/Injury: 08/25/2009
    Authorization No: PCCD-000327-

Dear Dr. Rosenberg:

This letter is sent in follow-up to your letter dated 12/5/09, wherein you requested an appeal to the denial issued by Medical Director, Dr. Greenwald, for 3 month rental of a motor-powere wheelchair and an orthopedic consultation to be provided for the above-captioned injured worker.

We enclose a copy of the decision of the appeal peer review for your consideration. Please note that based on a review of all medical records and further information, which was requested, the decision of non-authorization by Dr. Greenwald is reversed. Your request for 3 month rental of a motor-powere wheelchair and an orthopedic consultation is now approved.

Should you have any questions, please feel free to contact me at (951) 231-6800 Ext. 6846.

Sincerely,

Penny Moody
Medical Coordinator

Enclosure(s) Peer Review Descision

ltrU13/

cc: Peralta Community College District
    Rona  Young

*E.*

1/29/2010

Jacob A. Rosenberg, M.D.
450 N. Wiget Ln.
Walnut Creek, CA  94598

Re: Employee: Rona  Young
    Employer: Peralta Community College District
    Claim No: PCCD-000327
    D/Injury: 08/25/2009
    Authorization No: PCCD-000327-

Dear Dr. Rosenberg:

This letter is sent in follow-up to your letter dated 12/5/09, wherein you requested an appeal to the denial issued by Medical Director, Dr. Greenwald, for 3 month rental of a motor-powere wheelchair and an orthopedic consultation to be provided for the above-captioned injured worker.

We enclose a copy of the decision of the appeal peer review for your consideration. Please note that based on a review of all medical records and further information, which was requested, the decision of non-authorization by Dr. Greenwald is reversed. Your request for 3 month rental of a motor-powere wheelchair and an orthopedic consultation is now approved.

Should you have any questions, please feel free to contact me at (951) 231-6800 Ext. 6846.

Sincerely,

Penny Moody
Medical Coordinator

Enclosure(s) Peer Review Descision

ltrU13/

cc: Peralta Community College District
    Rona  Young

MAR 18 2010

## INTEGRATED PAIN MANAGEMENT MEDICAL GROUP, INC.

☐ JACOB A. ROSENBERG, M.D.
DEA # AR1782766, Lic. # C41230

☐ KASRA AMIRDELFAN, M.D.
DEA # BA5280641, Lic. # A066427

☐ KENNETH WON KIM, M.D.
DEA # BK8939704, Lic. # A81692

☐ ANN COTTRELL, M.D.
DEA # BC5482877, Lic. # G83970

☐ LAWRENCE WEIL, M.D.
DEA # BW5519845, Lic. # G84326

☐ DOUGLAS A. GRANT, M.D.
DEA # BG7918812, Lic. # A78859

☐ JEFF CHEN, M.D.
DEA # FC0364478, Lic. # A160382

☐ NEESHA DAVE, D.O.
DEA # BD9167912, Lic. # 20A8976

450 N. WIGET AVENUE • WALNUT CREEK, CA 94598 • 925-691-9806 • FAX: 925-691-9807

NAME _____

ADDRESS _____   DATE 4/2/10

℞ (Please Print)

Modified work —
Semi-sedentary to wheelchair
Powered, no lift > 15#
Tt if not available (TTD)

tjc 4/2/2010

☐ LABEL

REFILL _____ TIMES      PRN      NR

☐ DO NOT SUBSTITUTE      INITIALS _____

15-JUN-09                    TRI090615_109362577-77_01_09198_0031

**Gregory Valentine**

| | |
|---|---|
| **From:** | Rona Young <youngideals.rona@gmail.com> |
| **Sent:** | Monday, March 08, 2010 11:48 AM |
| **To:** | Magdelino, Deborah; Gregory Valentine; Robert Adams |
| **Cc:** | Mireles, Martin; Rona Young; Judy Bryson; Carrie Burdick; Horace Graham; Diana Lara; Nancy Pak |
| **Subject:** | Re: |
| **Attachments:** | Work Status March 2010.pdf; R. Young - Authz Ltr-1.pdf |

Rona Young
youngideals.rona@gmail.com
510 502 9229

March 8, 2010

RE: Work Status Update and Motorized Wheelchair Accommodation

Dear Dr. Adams and Mr. Valentine,

Attached is a recent request for me to return to modified duty: using a motorized wheelchair. The modification is to use the wheelchair that was approved some time ago as requested by President Adams so that I can continue my work. Initially, while I waited for the approval to use the wheelchair, I worked at home until I received a call from Mr. Valentine restricting what was verbally approved by the college president and the Chancellor.

Since the approval letter (dated January 29, 2010) was mailed by cc: to Peralta Community College District and Rona Young, I have not received any communication from the District agreeing to or denying me this accommodation.

I continue to have almost weekly dialog with Ms. Magdelino (claims adjuster at York) to make sure that I have a status update for ongoing medical care and pending authorization for surgery and accommodations. Since York Insurance cannot enforce the accommodations, Ms. Magdelino recommended that I contact you to determine whether this accommodation would be granted. Will I be able to return to modified duty by using a motorized wheelchair? The attached note from Dr. Rosenberg indicated that I may return to modified work with a motorized wheelchair.

Thank you for reviewing the attached material and I look forward to meeting with you soon.

cc: Nancy Pak
Horace Graham
Diana Lara
Deborah Magdelino

On Mon, Mar 8, 2010 at 10:40 AM, Rona Young <youngideals.rona@gmail.com> wrote:
Dear Deborah,
Can you email me a copy of the letter that authorizes the wheelchair. Thank you.

Do you have an update on the appeal for surgery?

1

Sincerely,
Rona

On Mon, Feb 8, 2010 at 9:10 AM, Magdelino, Deborah <Deborah.Magdelino@yorkisg.com> wrote:

Letter of authorization for evaluation with Orthopedic Surgeon (Dr. Peatman) and motorized wheelchair.

*Deborah Magdelino*
*Claims Examiner*
*York Insurance Services*
*Upland, California*
*Phone: (909)942-5443*
*Fax: (909)608-7165*

CONFIDENTIALITY NOTICE:  This message is intended to be viewed only by the listed recipient(s).  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.  Any dissemination, distribution or copying of this message is strictly prohibited without our prior permission.  If you are not the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies.

**Gregory Valentine**

| | |
|---|---|
| **From:** | Gregory Valentine |
| **Sent:** | Monday, March 08, 2010 1:19 PM |
| **To:** | 'Rona Young'; Magdelino, Deborah; Robert Adams |
| **Cc:** | Mireles, Martin; Judy Bryson; Carrie Burdick; Horace Graham; Diana Lara; Nancy Pak; Karen Ulrich; Nancy Pak |
| **Subject:** | RE: Re: |

Good Afternoon,

I have conferred with the Claim Examiner, College and Employee Relations on this accommodation. Due to the safety hazards presented by temporary use of a motorized wheelchair to you and due to the logistical requirements of the temporary use of a wheelchair, the College can not temporarily accommodate your use of a wheelchair during your recovery.

As a result, you will remain on full Industrial Leave until such time that your doctor declares you at Maximum Medical Improvement (MMI) or Permanent and Stationary. If you have any questions on this matter, please discuss them with Dr. Adams, Karen Ulrich or myself.

Thanks.

Greg Valentine
Director of Risk Management
Peralta Community College District
510-466-7247 office
925-915-5599 cell

---

**From:** Rona Young [mailto:youngideals.rona@gmail.com]
**Sent:** Monday, March 08, 2010 11:48 AM
**To:** Magdelino, Deborah; Gregory Valentine; Robert Adams
**Cc:** Mireles, Martin; Rona Young; Judy Bryson; Carrie Burdick; Horace Graham; Diana Lara; Nancy Pak
**Subject:** Re:


Rona Young
youngideals.rona@gmail.com
510 502 9229



March 8, 2010

RE: Work Status Update and Motorized Wheelchair Accommodation

Dear Dr. Adams and Mr. Valentine,

Attached is a recent request for me to return to modified duty: using a motorized wheelchair. The modification is to use the wheelchair that was approved some time ago as requested by President Adams so that I can continue my work. Initially, while I waited for the approval to use the wheelchair, I worked at home until I received a call from Mr. Valentine restricting what was verbally approved by the college president and the Chancellor.

Since the approval letter (dated January 29, 2010) was mailed by cc: to Peralta Community College District and Rona Young, I have not received any communication from the District agreeing to or denying me this accommodation.

1

I continue to have almost weekly dialog with Ms. Magdelino (claims adjuster at York) to make sure that I have a status update for ongoing medical care and pending authorization for surgery and accommodations. Since York Insurance cannot enforce the accommodations, Ms. Magdelino recommended that I contact you to determine whether this accommodation would be granted. Will I be able to return to modified duty by using a motorized wheelchair? The attached note from Dr. Rosenberg indicated that I may return to modified work with a motorized wheelchair.

Thank you for reviewing the attached material and I look forward to meeting with you soon.

cc: Nancy Pak
Horace Graham
Diana Lara
Deborah Magdelino

On Mon, Mar 8, 2010 at 10:40 AM, Rona Young <youngideals.rona@gmail.com> wrote:
Dear Deborah,
Can you email me a copy of the letter that authorizes the wheelchair. Thank you.

Do you have an update on the appeal for surgery?

Sincerely,
Rona

On Mon, Feb 8, 2010 at 9:10 AM, Magdelino, Deborah <Deborah.Magdelino@yorkisg.com> wrote:


Letter of authorization for evaluation with Orthopedic Surgeon (Dr. Peatman) and motorized wheelchair.



*Deborah Magdelino*
*Claims Examiner*
*York Insurance Services*
*Upland, California*
*Phone: (909)942-5443*
*Fax: (909)608-7165*

CONFIDENTIALITY NOTICE: This message is intended to be viewed only by the listed recipient(s). It may contain information that is privileged, confidential and exempt from disclosure under applicable law. Any dissemination, distribution or copying of this message is strictly prohibited without our prior permission. If you are not the intended recipient, or if you have received this communication in error, please notify us immediately by return e-mail and delete the original message and any copies.

# EXHIBIT C

**PERALTA COMMUNITY COLLEGE DISTRICT BOARD OF TRUSTEES**
**RESOLUTION NO. 09/10-48 To Eliminate Certain Services & Related Layoff Notices**

At its regular meeting held on May 25, 2010, the Peralta Community College District hereby resolves the following:

**WHEREAS,** under the Principles for Sound Fiscal Management adopted by the Community College Board of Governors, Title 5, California Code of Regulations, §58311, each District shall be responsible for the ongoing fiscal stability of the District through the responsible stewardship of available resources; and

**WHEREAS,** the State fiscal crisis has had a devastating impact on the District's financial condition; and

**WHEREAS,** District-wide approaches to address the reduction of funding for General Fund positions will likely require significant reductions and/or discontinuance/elimination of current services; and

**WHEREAS,** the Board of Trustees complies with California Education Code §§88005, 88117, and 88127 in its deletion of affected positions; and the District is required by California Education Code §88017 to notify affected classified incumbents no earlier than 45 calendar days prior to the effective date of lay-off.; and

**WHEREAS,** the following classified position allocations are hereby affected by lack of funds, effective July 15, 2010:

| Position Title | FTE | Site/Department |
|---|---|---|
| Clerical Assistant II | 1.00 | Merritt – Student Services |
| Instructional Assistant/English | 1.50 | BCC – Instruction |
| Physical Education Attendant | 5.00 | COA/Laney/Merritt - Athletics |
| Program Specialist/Placement | 1.00 | Laney – Student Services |
| Program Specialist/Student Activities | 1.00 | BCC – Student Services |
| Public Information Officer | 2.00 | Laney/Merritt – President's Office |
| Secretary | 1.00 | COA – Instruction |
| Sr. Clerical Assistant/Typing | 2.00 | COA – Instruction |
| Staff Assistant/EOPS | 1.00 | Merritt – Student Services |
| Staff Services Specialist/Fiscal | 2.00 | Merritt – Business Office |
| Staff Assistant/Business Services | 1.00 | Merritt – Business Office |
| Toolroom Keeper I/Automotive | 1.00 | COA – Instruction |

**NOW, THEREFORE, BE IT RESOLVED THAT:**
The Chancellor is directed to:

1. Immediately notify all affected employee organizations of the issues, directions and concerns set forth in this Resolution, in order to allow any affected organization to request to meet and negotiate any resulting affects of lay-off.

2. Comply with all applicable sections of the California Education Code in preparing any and all required lay-off and/or reassignment notices to classified incumbents so affected by lack of funding, and any and all notices as required by collective bargaining agreement.

PERALTA COMMUNITY COLLEGE DISTRICT BOARD OF TRUSTEES
RESOLUTION NO. 09/10-48 To Eliminate Certain Services & Related Layoff Notices

**THE BOARD OF TRUSTEES HAS DETERMINED**, after public input, that layoff of employees is a necessary and last fiscally viable response to the District's adverse budgetary situation.

**PASSED AND ADOPTED ON THIS** 25TH day of May 2010, by the Board of Trustees of the Peralta Community College District of Alameda County, California, by the following vote:

> **AYES: Trustees Handy, Riley, Withrow, Gulassa, and Guillen.**
>
> **NOES: Trustees Gonzalez Yuen and Hodge.**
>
> **ABSTAIN: None**
>
> **ABSENT: None**

I, Chancellor Elihu M. Harris, Secretary to the Board of Trustees of the Peralta Community College District of Alameda County, do hereby certify that the foregoing Resolution was adopted by the Board at its regular meeting of May 25, 2010, by the above-stated vote, which Resolution is on file in the Office of said Board.

Date: 5-26-10

Elihu M. Harris, Secretary to the Board of Trustees
PERALTA COMMUNITY COLLEGE DISTRICT

# EXHIBIT D



# Peralta Community College District

333 East Eighth Street • Oakland, California 94606 • (510) 466-7200

CERTIFIED MAIL # 7004 1160 0007 3367 3543 and REGULAR MAIL

May 28, 2010

Rona Young
3852 Loma Vista Avenue
Oakland, CA 94619

Dear Ms. Young:

At its regular meeting on May 25, 2010, the Board of Trustees of the Peralta Community College District adopted a resolution eliminating certain classified services due to lack of funds. (Resolution No. 09/10-48 is attached.)  This letter constitutes notice that your position was affected by this action.  If your position is not specifically listed on the resolution, then you are affected by bumping exercised by employees in your same classification with more seniority. As a result, you will be reassigned effective on July 15, 2010.

Layoffs of classified personnel are authorized pursuant to Education Code, sections 88014, 88015, 88017, 88117, and 88127; copies of these sections are attached for your information.

Your seniority date in your current classification of Public Information Officer is 3/21/2000.

Our records indicate that you also have seniority in the Staff Service Specialist/Public Information classification with a seniority date of 2/5/1997.  Finally, our records indicate that you also have seniority in the Staff Assistant/Marketing classification with a seniority date of 11/1/1994.

As you have greater seniority in your class than other incumbents who will face a layoff, you have the right to move into another position.  Based on your seniority, it is the District's intent to reassign you, effective July 15, 2010, as follows:

FROM:   Public Information Officer          Merritt College
TO:       Public Information Officer          College of Alameda

You have the right to reject this reassignment in favor of layoff and/or (if eligible) retirement.

Should you believe that your seniority rights differ from our records, you are required to complete the enclosed Response Form and forward it to me on or before June 15, 2010.  If the completed Response Form is not received in my office on or before June 15, 2010, it will be assumed that you agree with your current seniority status, and we will proceed with lay-off or reassignment as described above, in accordance with Education Code.

If you reject the reassignment, then pursuant to your rights as a California Community College classified employee as stated in the Education Code, you will be eligible for reemployment into the first 12-month Public Information Officer position that becomes available for appointment in the District for a period of 39 months, effective July 15, 2010 through October 15, 2013. When a

Berkeley City College      College of Alameda      Laney College .     Merritt College

12-month Public Information Officer position becomes available in the District during the 39-month period of time you will receive formal notice from the Office of Human Resources, and will be placed in that position, provided there are no other laid-off employees from the same classification on the 39-month List with more seniority than you have.

Your reemployment from the 39-month Reemployment List into an available Public Information Officer position in the District shall be in preference to any new applicants, and you would be restored in full to your seniority with benefits, paid leave accrual rates, salary step placement, and all other rights and burdens of classified service.

You will be invited to a meeting at which we will explain the information contained in this letter, as well as your rights to reemployment. You have the right to representation for all of the phases of this process.

Concerning other entitlements and options that may be available to you, please contact the following:

| | | |
|---|---|---|
| 1. | Unemployment Compensation | Any Employment Development Department (EDD) office. Please check your local directory for address. (800) 300-5616 http://www.edd.ca.gov/ |
| 2. | Eligibility for Service Retirement | Public Employees' Retirement System (PERS) Office 1-888 CalPERS (or 1-888 -225-7377), Monday through Friday, 8:00 a.m. to 5:00 p.m. (Closed 1st three Fridays of each month) **Walnut Creek Regional Office** 1340 Treat Boulevard, Suite 200 Walnut Creek, CA 94597 |

If you have questions or need any additional information, either before or after our upcoming meeting, you are invited to contact me at 510/466-7257.

Respectfully yours,

David Betts
Deputy Director of Human Resources


Enclosures:    Board Resolution 09/10-48
               California Education Code sections 88014, 88015, 88017, 88117, and 88127
               Response Form
               How to File an Unemployment Insurance Claim

Cc:    Elihu M. Harris, Esq., Chancellor
       Dr. Robert Adams, Merritt College
       Nely Obligacion, Representative, SEIU, Local 1021
       Diana Lara, President, SEIU, Local 1021, Peralta Chapter

# RESPONSE/ELECTION FORM:

NOTICE OF SELECTION REGARDING LAYOFF

TO:          David Betts, Deputy Director of Human Resources

FROM:          _____

**PART I:** In response to the seniority rights outlined for me in the notice dated May 28, 2010, I believe that my employment in Peralta Community College District has resulted in seniority rights that differ from the information provided as District records.

The following is a statement of the seniority rights that I believe to be correct:  (specify)

<br><br><br><br><br><br>

**PART II:** I hereby acknowledge that in accordance with law I have received notification of layoff. Pursuant to the choices presented to me, I hereby select:

_____     To accept the reassignment instead of a layoff/reduction.

_____     Layoff: request placement on the 39-month re-employment list and do not wish to exercise displacement (bumping) rights.

_____     Resign my present position.  My last working day will be _____.

_____     Retire from employment with the Peralta Colleges.  I have received confirmation of my eligibility to retire, and my last working day will be _____.

I understand that this Response Form must be received in the Office of Human Resources on or before June 15, 2010.

I also understand that the above information will be reviewed, and that I will be contacted regarding my resulting rights, and that I have the right to representation in any and all procedures related to this matter.

Employee Signature: _____   Date: _____

## PERALTA COMMUNITY COLLEGE DISTRICT
### PERSONNEL ASSIGNMENT REQUEST (PAR)

EMPLOYEE ID (If known) **10001443**

| NAME (LF/MI) | Young, Rona |
|---|---|
| ADDRESS | On File |
| CITY, STATE, ZIP | |
| HOME PHONE | |
| WORK PHONE | |
| MESSAGE/CELL: | |

| | |
|---|---|
| DATE OF FORM | July 12, 2010 |
| COLLEGE/SITE | [✓] COA   [ ] BCC   [ ] Laney   [ ] Merritt   [ ] District |
| DEPARTMENT | 201 (President's Office) |
| POSITION CONTROL | 00000259 |
| BEGINNING DATE | July 15, 2010 |
| END DATE | |

### ACTION REQUESTED

[ ] Initial Employment
[ ] Employment w/ prior classified service
[ ] Employment w/ prior student service
[ ] Employment w/prior faculty service
[ ] Reclassification
[ ] Out of Classification
[✓] Additional Assignment
[✓] Change in Status, dates, pay rate, etc.
[ ] Additional Assignment
[ ] Employment in Contract Ed.
[ ] Interim Employment
[ ] Bi-Lingual Stipend (Classified)

[ ] Termination
[ ] Resignation
[ ] Retirement
[ ] Death
[ ] Correction
[ ] Request to Advertise
[ ] Extend MGMT Contract

[ ] Other - Specify in comments

ENTERED

### ASSIGNMENT STATUS

**CERTIFICATED**
[ ] Permanent
[ ] Adjunct
[ ] Substitute
[ ] LTS
[ ] Mgr -Academic
[ ] Retiree
[ ] Head Coach
[ ] Coach
[ ] Asst Coach
[ ] ZZOIS
[ ] Other: Specify in Comments

**CLASSIFIED**
[✓] Permanent
[ ] Hourly
[ ] Seasonal 1
[ ] Seasonal 2
[ ] Substitute - Recruit
[ ] Substitute - Temp Lv
[ ] Confidential
[ ] Mgr- Classified
[ ] Other: (Comments)
**STUDENT EMPL.**
[ ] Student Employment

### POSITION INFORMATION
A. POSITION CODE:
B. POSITION TITLE: (TEACHING AREA, IF ACADEMIC)
C. TIME BASE- CLASSIFIED (hrs. & days/week, month/year)
D. TIME BASE- ACADEMIC (hrs. & days/week, month/year)
E. TIME BASE - STUDENTS (hours per week)
F. TEMPORARY INSTRUCTORS: EQUATED LOAD
   OAD EXCEPTION: EQUATED LOAD* REQUIRES VC APPROVAL
[ ] ACADEMIC DISCIPLINE:   [ ] MASTERS   [ ] NON MASTERS   [ ] EQUIVALENCY   [ ] CREDENTIAL

| | CURRENT STATUS | NEW STATUS |
|---|---|---|
| | 876 | 876 |
| | Public Information Office | Public Information Office |
| | 40 hours/12 month | 40 hours/12 month |
| | | |
| | | |
| | | |
| | | |

### FRINGE BENEFITS
[✓] ELIGIBLE
[ ] NOT ELIGIBLE
[ ] EMPLOYEE CONTRIBUTION _____ %
[ ] DECLINE

**ACCOUNT CODE**
2 - 01 - 201 - 2102 - 1 - 671000 - 000 000

Comments:

### FINANCIAL AID OFFICE ONLY - STUDENT EMPLOYMENT
Loc  Fund  Cost Center  Object  Proj  Activity  Suffix  Project  Line

I certify funds available _____

Fin Aid Student [ ] YES   [ ] NO
FWS AWARD [____]

Financial Aid Office _____

| | Current Status | New Status |
|---|---|---|
| Pay rate | $5,662 | $5,662 |
| Schedule (IF PFT  60%/75%, 79%, 39, etc.) | 1021 | 1021 |
| Range/Step | 96/step 5 | 96/step 5 |

Est. Cost
Categorical  Yes [ ]  No [ ]

### COMMENTS (if faculty hire, must list degree(s) for eligibility)
In lieu of layoff, Ms. Young will transfer to the Public Information Officer position at the College of Alameda. This transfer is an exercise of bumping rights.

Replacement for (Name of person replacing):

### APPROVALS

| IMMEDIATE MANAGER/DATE | VP/SUPERVISOR/DATE | BUSINESS MGR/DATE | PRESIDENT/DATE |
|---|---|---|---|
| | | | |

**DISTRICT OFFICE BUDGET SERVICES USE ONLY**
Budgeted   [ ] Yes   [ ] No
ACCOUNT CODE VERIFIED:
[ ] VALID ACCOUNT   [ ] NEW
[ ] BUDGET TRANSFER REQUIRED

District Budget Office _____ DATE _____

**PERSONNEL**
Salary, Date of Employment/ Action verified by:

Human Resources Staff _____ Date _____

ENTERED BY: _____ initial 7/12/10
DIRECTOR OF HUMAN RESOURCES _____ DATE
VICE CHANCELLOR OR CHANCELLOR _____ DATE

Min. Qualifications
[ ] Yes
[ ] No

Revised as of 7/12/2010

payroll 7/14/10

# EXHIBIT E

Case 3:14-cv-05351-JD   Document 1-1   Filed 12/05/14   Page 22 of 57



**R Young <youngideals.rona@gmail.com>**

---

## FW: Ensuing Layoff of Injured Worker When Adams Informed of Recovery Delay

2 messages

---

**Rona Young** <ryoung@peralta.edu>
To: "youngideals.rona@gmail.com" <youngideals.rona@gmail.com>

Tue, Feb 22, 2011 at 9:24 AM

Dear Colleagues, Merritt Students and Prospective Students,

Thank you for your interest in Merritt College!

I am on Industrial Leave and the statutes governing injured workers do not allow injured workers to correspond during any period of industrial leave. In advance, if there is an ongoing commitment that is incomplete, please refer to the Office of the President to identify staff that will fulfill the required obligations.

You may send any inquiries about Merritt College or the Peralta Community College District to:

Dr. Robert A. Adams
Office of the President
C/o Judy Bryson, Executive Assistant
jbryson@peralta.edu
(510) 436-2416

To all professional organizations and contacts, I am unable to retrieve emails during my leave. Please forward all newsletters or updates to my personal email: youngideals.rona@gmail.com.

I look forward to a speedy return!

Rona Young
Public Information Officer
Merritt College

---

From: Diana Lara
Sent: Monday, May 10, 2010 9:27 AM
To: 'Tim West'
Cc: Nely Obligacion; Rona Young; 'Jorge Guzman'; Mary Jane Logan; Abigail Brewer
Subject: FW: Ensuing Layoff of Injured Worker When Adams Informed of Recovery   Delay

5/10/2010

Hi Tim,

Can you please check with your attorney to see if it is illegal to eliminate / layoff an employee while he/she is due to a working comp injury?

She has not yet received a lay off letter from the District, nor has it yet been approved by the Board for lay-off notifications.

Sincerely,
Diana Lara
Peralta Chapter President, SEIU Local 1021

---

From: Rona Young [mailto:youngideals.rona@gmail.com]
Sent: Sunday, May 09, 2010 1:05 PM
To: Horace Graham; Diana Lara; nely.obligacion@seiu1021.org; Tim West; Rona Young
Subject: Re: Ensuing Layoff of Injured Worker When Adams Informed of Recovery Delay

On Sun, May 9, 2010 at 12:57 PM, Rona Young <youngideals.rona@gmail.com<
mailto:youngideals.rona@gmail.com>> wrote:
Hello SEIU Colleagues,

Dr. Adams called me on Friday afternoon to inform me that he would eliminate my position at Merritt and that I
would have to contact David Betts as I will be going to Laney College. This call came at a time when I had just
dent him a notice from my doctor that I received in my preop visit (sent via facsimile on Tuesday, May 4 right
before I had surgery for a work related injury). He called me without regard for my condition and began saying
that he wanted to let me know that he was eliminating my position and would regira a PIO in a year or two when
the position is converted to a confidentail position; at least you have a job and you will go to Laney to work. I
asked if he was informed about the full details of my bumping rights since I am also senior to Shirleen at COA.
He informed me that I'd have to discuss this with David. I asked who David was and he said, "David Betts".

Nevertheless, I was shocked and amazed with his demeanor and noticed that he wanted to make sure that the
attached notice dated 5/7/10 from Human Resources would not reach me without proior information.

I would like to meet with you to discuss my protections as an injured worker and the blatant disregard for my
physical health.

Please contact me at 510 502 9229.

Thank you, Rona Young

—

"Love the Lord your God with all your heart and with all your soul and with all your mind and with all your
strength. The second is this: 'Love your neighbor as yourself.' There is no commandment greater than these." -
Mark 12:30-31 (NIV)

—

"Love the Lord your God with all your heart and with all your soul and with all your mind and with all your
strength. The second is this: 'Love your neighbor as yourself.' There is no commandment greater than these." -
Mark 12:30-31 (NIV)

📄 **Informed of Layoff due to Wkr Comp Injury.pdf**
   13223K

---

**Rona Young** <ryoung@peralta.edu>                                          Tue, Feb 22, 2011 at 9:26 AM
To: "youngideals.rona@gmail.com" <youngideals.rona@gmail.com>

[Quoted text hidden]

📄 **Informed of Layoff due to Wkr Comp Injury.pdf**
   13223K



*5 4/7/10  Rec'd brief call at hospital from Adams to inform me that he was eliminating my position and to contact David Betts.*

## Peralta Community College District
## Office of Human Resources

Date:        May 6, 2010

— *rec'd letter by regular US Post mail on Sat. 4/8/10*
*5*

From:        Office of Human Resources

To:          Impacted Employees

Subject:     Layoff Resolution

---

This is to advise you that at next meeting of the Peralta Community College District Board of Trustees, they will be considering a resolution to lay off a number of positions.   This meeting will take place on Tuesday, May 11, 2010.  We wanted to inform you in advance that your position may be either one of the positions listed on the resolution or one of the positions that will be impacted by bumping or exercise of rights by an employee with more seniority than you.

These were very difficult and painful decisions for everyone involved.  The effective date for these changes will be no later than June 30, 2010.  You will be receiving further information in the coming days.

---

Pe**r**munity College District

333 E. Oakland, California 9460

3 01 44
US POSTAGE

Rona Young
3852 Loma Vista Ave.
Oakland, CA   94602

946198i426 C010

Page 1 of 1

RE_ Transfer to College of Alameda Documentation for Rona Young
From: "Rona Young" <ryoung@peralta.edu>
To: "Diana Lara" <dlara@peralta.edu>; "Helena Lengel" <hlengel@peralta.edu>;
<youngideals.rona@gmail.com>
Subject: RE: Transfer to College of Alameda Documentation for Rona Young
Date: Monday, June 14, 2010 12:28 PM

Hello Helena,

Attached is the Transfer form and a confirmation of the email. My  only other
concern is that the beginning dates for my emploment as the PIO at Merritt may be
incorrect.  I served as the interim for one ear before I was hired permanently but
the District dates are missing year or so of time served.

Thanks,

Rona
510 502 9229
youngideals.rona@gmail.com


Dear Colleagues, Merritt Students and Prospective Students,

Thank you for your interest in Merritt College!

I am on Industrial Leave and the statutes governing injured workers do not allow
injured workers to correspond during any period of industrial leave.  In advance, if
there is an ongoing commitment that is incomplete, please refer to the Office of the
President to identify staff that will fulfill the required obligations.

You may send any inquiries about Merritt College or the Peralta Community College
District to:

Dr. Robert A. Adams
Office of the President
C/o Judy Bryson, Executive Assistant
jbryson@peralta.edu
(510) 436-2416

To all professional organizations and contacts, I am unable to retrieve emails
during my leave. Please forward all newsletters or updates to my personal email:
youngideals.rona@gmail.com.

I look forward to a speedy return!

Rona Young
Public Information Officer
Merritt College

---

From: Diana Lara
Sent: Monday, June 14, 2010 9:14 AM
To: Helena Lengel
Cc: Rona Young
Subject: FW: Transfer to College of Alameda Documentation for Rona Young

Hi Helena, Interim Chief Steward:

I know you are tracking the layoff bumping – here is Rona Young's response to the
District.

Diana Lara
Peralta Chapter President, SEIU Local 1021

RE_ Transfer to College of Alameda Documentation for Rona Young
From: Rona Young [mailto:youngideals.rona@gmail.com]
Sent: Monday, June 14, 2010 9:12 AM
To: nely.obligacion@seiu1021.org; Tim West; Horace Graham; dbetts@peralt.a.edu;
Diana Lara
Cc: Rona Young
Subject: Re: Transfer to College of Alameda Documentation for Rona Young

Mr. Betts, The information about my senioroty as the public information officer is
incorrect. I came to Merritt when Dr. Wise Allen became president in 1995/6, as the
interium PIO and then was hired permanently.

Rona Young
On Mon, Jun 14, 2010 at 9:05 AM, Rona Young
<youngideals.rona@gmail.com<mailto:youngideals.rona@gmail.com>> wrote:

---------- Forwarded message ----------
From: Rona Young <ryoung@peralta.edu<mailto:ryoung@peralta.edu>>
Date: Mon, Jun 14, 2010 at 8:48 AM
Subject: Transfer to College of Alameda Documentation for Rona Young

# EXHIBIT F

# EXHIBIT G

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # _____

EEOC # _____

If dual-filed with EEOC, this form may be affected by the Privacy Act of 1974.

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING and EEOC

COMPLAINANT'S NAME (indicate Mr. or Ms.)
Young, Rona (Ms.)

| ADDRESS | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| 131 Royal Crest Drive | (510) 502-9229 |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| Columbia, SC 29229 | Out of State | 000 |

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

NAME
Peralta Community College District (Merritt College)

| ADDRESS | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| 333 E. Eighth Street | (510) 466-7386 |

| CITY | STATE | ZIP | COUNTY | COUNTY CODE |
|---|---|---|---|---|
| Oakland | CA | 94606 | Alameda | 001 |

CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOX(ES))
☐ RACE  ☐ SEX  ☒ DISABILITY  ☐ RELIGION  ☐ NATIONAL ORIGIN/ANCESTRY  ☐ DENIAL OF FAMILY/MEDICAL LEAVE  ☐ SEXUAL ORIENTATION
☐ COLOR  ☐ AGE  ☐ MARITAL STATUS  ☐ MEDICAL CONDITION (cancer or genetic characteristics)  ☐ OTHER (SPECIFY) _____

| NO. OF EMPLOYEES/MEMBERS | DATE MOST RECENT OR CONTINUING DISCRIMINATION | RESPONDENT CODE |
|---|---|---|
| 900 | TOOK PLACE (month, day, and year) November 10, 2010 | 95 |

THE PARTICULARS ARE:

I. I was denied a reasonable accommodation in January 2010 and constructively terminated on May 7, 2010 which forced me to retire on November 10, 2010. I was hired as a Public Information Officer in February 1994 and earning $5,600 a month.

II. Mr. Greg Valentine, Risk Manager, told me that the reasonable accommodation (the ability to use a motorized wheelchair at work) was denied by Dr. Robert Adams, President of Merritt College, Karen Ulrich, Human Resources Manager and himself, Greg Valentine.

III. I believe that I was denied a reasonable accommodation, and constructively terminated because of my disability (spine, shoulder and hands) for the following reasons:

A. On May 7, 2010, I was denied the ability to use a wheelchair at work. My doctor's note dated October 2010 indicating my ability to go back to work with a reasonable accommodation (the use of a motorized wheelchair) was ignored.

B. The denial of my request for a reasonable accommodation forced me to constructively terminate my employment and forced me to take my retirement on November 10, 2010.

C. I could have performed the essential job functions with this minimal accommodation.

☒ I also want this charge filed with the Federal Equal Employment Opportunity Commission (EEOC).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated _16 May 2011_

At _Columbia_
　　　City

COMPLAINANT'S SIGNATURE

Typed and mailed for signature: 5-12-11

DATE FILED:

DFEH-300-01 (12/99)        S:SJ:DV:rm
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA



RECEIVED

2011 MAY 17   AM 10: 44

DEPT. OF FAIR EMPLOYMENT
& HOUSING
BAY AREA REGIONAL

# ˘ * * EMPLOYMENT * ˘ *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # _____

EEOC # _____

If dual-filed with EEOC, this form may be affected by the Privacy Act of 1974.

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING and EEOC

COMPLAINANT'S NAME (Indicate Mr. or Ms.)

Young, Rona (Ms.)

| ADDRESS | TELEPHONE NUMBER (INCLUDE AREA CODE |
|---|---|
| 131 Royal Crest Drive | (510) 502-9229 |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| Columbia, SC  29229 | Out of State | 000 |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHII COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME

Peralta Community College District (Merritt College)

| ADDRESS | TELEPHONE NUMBER (INCLUDE AREA CODE |
|---|---|
| 333 E. Eighth Street | (510) 466-7386 |

| CITY | STATE | ZIP | COUNTY | COUNTY CODE |
|---|---|---|---|---|
| Oakland | CA | 94606 | Alameda | 001 |

CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOXIES))

☐ RACE   ☐ SEX   ☒ DISABILITY   ☐ RELIGION   ☐ NATIONAL ORIGIN/ANCESTRY   ☐ DENIAL OF FAMILY/MEDICAL LEAVE   ☐ SEXUAL ORIENTATION
☐ COLOR   ☐ AGE   ☐ MARITAL STATUS   ☐ MEDICAL CONDITION (cancer or genetic characteristics)   ☐ OTHER (SPECIFY) _____

| NO. OF EMPLOYEES/MEMBERS | DATE MOST RECENT OR CONTINUING DISCRIMINATION | RESPONDENT CODE |
|---|---|---|
| 900 | TOOK PLACE (month, day, and year) November 10, 2010 | 95 |

THE PARTICULARS ARE:

I.    I was denied a reasonable accommodation in January 2010 and constructively terminated on May 7, 2010 which forced me to retire on November 10, 2010.  I was hired as a Public Information Officer in February 1994 and earning $5,600 a month.

II.   Mr. Greg Valentine, Risk Manager, told me that the reasonable accommodation (the ability to use a motorized wheelchair at work) was denied by Dr. Robert Adams, President of Merritt College, Karen Ulrich, Human Resource Manager and himself, Greg Valentine.

III.  I believe that I was denied a reasonable accommodation, and constructively terminated because of my disability (spine, shoulder and hands) for the following reasons:

A.    On May 7, 2010. I was denied the ability to use a wheelchair at work.  My doctor's note dated October 2010 indicating my ability to go back to work with a reasonable accommodation (the use of a motorized wheelchair) was ignored.

B.    The denial of my request for a reasonable accommodation forced me to constructively terminate my employment and forced me to take my retirement on November 10, 2010.

C.    I could have performed the essential job functions with this minimal accommodation.

☒ I also want this charge filed with the Federal Equal Employment Opportunity Commission (EEOC).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated  _16 May 2011_

At  _California_
     City

COMPLAINANT'S SIGNATURE  _Rona Young_

Typed and mailed for signature: 5-12-11
DATE FILED: _____

DFEH-300-01 (12/99)     S:SJ:DV:rm
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA

# * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # _____

EEOC # _____

If dual-filed with EEOC, this form may be affected by the Privacy Act of 1974.

### CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING and EEOC

| COMPLAINANT'S NAME (indicate Mr. or Ms.) | | |
|---|---|---|
| Young, Rona (Ms.) | | |

| ADDRESS | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| 131 Royal Crest Drive | (510) 502-9229 |

| CITY/STATE/ZIP | COUNTY | COUNTY CODE |
|---|---|---|
| Columbia, SC 29229 | Out of State | 000 |

**NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:**

| NAME | |
|---|---|
| Peralta Community College District (Merritt College) | |

| ADDRESS | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| 333 E. Eighth Street | (510) 466-7386 |

| CITY | STATE | ZIP | COUNTY | COUNTY CODE |
|---|---|---|---|---|
| Oakland | CA | 94606 | Alameda | 001 |

**CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOX(ES))**

☐ RACE   ☐ SEX   ☒ DISABILITY   ☐ RELIGION   ☐ NATIONAL ORIGIN/ANCESTRY   ☐ DENIAL OF FAMILY/MEDICAL LEAVE   ☐ SEXUAL ORIENTATION
☐ COLOR   ☐ AGE   ☐ MARITAL STATUS   ☐ MEDICAL CONDITION (cancer or genetic characteristics)   ☐ OTHER (SPECIFY) _____

| NO. OF EMPLOYEES/MEMBERS | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) November 10, 2010 | RESPONDENT CODE |
|---|---|---|
| 900 | | 95 |

**THE PARTICULARS ARE:**

I.  I was denied a reasonable accommodation in January 2010 and constructively terminated on May 7, 2010 which forced me to retire on November 10, 2010. I was hired as a Public Information Officer in February 1994 and earning $5,600 a month.

II.  Mr. Greg Valentine, Risk Manager, told me that the reasonable accommodation (the ability to use a motorized wheelchair at work) was denied by Dr. Robert Adams, President of Merritt College, Karen Ulrich, Human Resources Manager and himself, Greg Valentine.

III.  I believe that I was denied a reasonable accommodation, and constructively terminated because of my disability (spine, shoulder and hands) for the following reasons:

A.  On May 7, 2010, I was denied the ability to use a wheelchair at work. My doctor's note dated October 2010 indicating my ability to go back to work with a reasonable accommodation (the use of a motorized wheelchair) was ignored.

B.  The denial of my request for a reasonable accommodation forced me to constructively terminate my employment and forced me to take my retirement on November 10, 2010.

C.  I could have performed the essential job functions with this minimal accommodation.

☒ I also want this charge filed with the Federal Equal Employment Opportunity Commission (EEOC).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated _____

_____
City

COMPLAINANT'S SIGNATURE

Typed and mailed for signature: 5-12-11
DATE FILED:

DFEH-300-01 (12/99)        S:SJ:DV:rm
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA

**DOMINIC**

**January 13, 2011**

**Complaint by**
**RONA YOUNG** / Peralta Com College Dist

I.   I was denied reasonable accommodation in January
     2010 and constructively terminated on May 7, 2010
     which forced me to retire on November 10, 2010.  I was
     hired as a Public Information Officer in February 1994
     and earning $5,600 a month.

II.  Mr. Greg Valentine, Risk Manager, told me that
     reasonable accommodation (the ability to use a
     motorized wheelchair at work) was denied by Dr. Robert
     Adams, President of Merritt College, Karen Ulrich,
     Human Resources Manager and himself, Greg Valentine.

III. I believe that I was denied reasonable accommodation,
     and constructively terminated because of my disability
     (spine, shoulder and hands) for the following reasons:

     A.  On May 7, 2010, I was denied the ability to use a
         wheelchair at work.  My doctor's note dated October
         2010 indicating my ability to go back to work with
         reasonable  accommodation (the use of a motorized
         wheelchair) was ignored.

     B.  The denial of my request for reasonable
         accommodation forced me to constructively
         terminate my employment and forced me to
         take my retirement on November 10, 2010.

     D.  I could have performed the essential job functions
         with this minimal accommodation.

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| **To:** RONA YOUNG<br>131 Royal Crest Drive<br>Columbia, SC 29229 | **From:** San Francisco District Office<br>450 Golden Gate Avenue<br>5 West, P.O. Box 36025<br>San Francisco, CA 94102 |

[ ]  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **37A-2011-08514** | **Malinda K. Tuazon,**<br>**Investigator** | **(415) 522-3126** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____     05/29/2014
for  **Michael Baldonado,**                    (Date Mailed)
     **District Director**

Enclosures(s)

cc:
Greg Valentine, Director of Risk Management
**PERALTA COMMUNITY COLLEGE DISTRICT**
333 East Eighth Street
Oakland, CA 94606



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
San Francisco District Office

350 The Embarcadero, Suite 500
San Francisco, CA 94105
(415) 625-5600
TTY (415) 625-5610
FAX (415) 625-5609
Toll Free (800) 669-4000

June 6, 2012

Ms. Rona Young
131 Royal Crest Drive
Columbia, South Carolina 29229

EEOC Number: 37A-2011-08514

Dear Ms. Young:

The State of California, Department of Fair Employment and Housing, has sent us a copy of your charge of employment discrimination. Because of a formal agreement between the state agency and the U.S. Equal Employment Opportunity Commission (EEOC), the state agency has waived jurisdiction or does not have jurisdiction over your charge and has requested the EEOC to process it. This filing is being done in order to protect your right to pursue this matter in federal court should you desire to do so at a later date.

A copy of your charge will be served upon the Respondent within ten days (10) of the date your charge was received by this office.

We suggest that you keep this notice and a copy of your charge for your records. Be sure to advise us of any change in your address or telephone number. Failure to do so could result in dismissal of your charge. Please use your EEOC charge number on all correspondence.

Thank you for your cooperation. If you need further assistance, please contact Amber Turner at (415) 625-5668.

Sincerely,

Eric Darius
CRTI UNIT SUPERVISOR

Enclosure (1)
Copy of Charge

**Vessigault, Dominic@DFEH**

| | |
|---|---|
| **From:** | Tinsay, Genevieve@DFEH |
| **Sent:** | Tuesday, May 17, 2011 11:03 AM |
| **To:** | Vessigault, Dominic@DFEH |
| **Cc:** | Pederson, Allan@DFEH; Wong, Jason@DFEH |
| **Subject:** | corrected complaint |
| | |
| **Attachments:** | DFEH Complaint 05162011Pederson.pdf |



DFEH Complaint
05162011Pederso...

          I received telephone call and email from Rona Young.
Today, I also received her signed complaint.
Please send her a corrected mail for signature, Because she wants to add leg on paragraph
III.
Thank you.

-----Original Message-----
From: Rona Young [mailto:youngideals.rona@gmail.com]
Sent: Monday, May 16, 2011 4:07 PM
To: Tinsay, Genevieve@DFEH
Cc: Rona Metro
Subject: Fwd: Complaint for Rona Young, Total Knee Replacement, Left Ankle and Left Arm
Ulnar Nerve not listed body parts

---------- Forwarded message ----------
From: Rona Young <youngideals.rona@gmail.com>
Date: Mon, May 16, 2011 at 6:52 PM
Subject: Complaint for Rona Young, Total Knee Replacement, Left Ankle and Left Arm Ulnar
Nerve not listed body parts
To: Dominic Vessigault <dominic.vessigault@dfeh.ca.gov>, allan.pederson@dfeh.ca.gov
Cc: Rona Metro <youngideals.rona@gmail.com>


Mr. Pederson,

I signed and mailed the complaint that is attached via U.S. Postal Service Express Mail
today.  Thank you and your staff for initiating the written complaint and for all the work
that Mr. Vessigault completed on intake.

I did notice that the body parts listed under Item III. did not include my total knee
replacement surgery which is when Dr. Adams called me in the hospital to inform me that he
was eliminating my position [four days after surgery].

I also had additional work related injuries:

left arm ulnar nerve transposition surgery in December 2007 [work related],

liver surgery in May 2008  [not work related, had colon cancer in 1999 and doctor thought
the cancer came back but it was tumors from too many steriod injections to cope with 2003
back injury pain], and

in December 2003 as a result of a back injury my sciatic nerve issues caused my left leg
to collapse and my ankle broke resulting in four surgeries  [work related].


The particulars are:
I.       I was denied a reasonable accommodation in January 2010 and constructively
terminated on May 7, 2010 which forced me to retire on November 10, 2010. I was hired as a
Public Information Officer in February 1994 and earning $5,600 a month.

## Vessigault, Dominic@DFEH

| | |
|---|---|
| **From:** | Pederson, Allan@DFEH |
| **Sent:** | Tuesday, May 17, 2011 1:34 PM |
| **To:** | Florentine, Barbara@DFEH; Carpenter, Tracee@DFEH |
| **Cc:** | Ramirez, Edunie@DFEH; Vessigault, Dominic@DFEH |
| **Subject:** | FW: corrected complaint |
| | |
| **Attachments:** | DFEH Complaint 05162011Pederson.pdf |

DFEH Complaint
05162011Pederso...

            Please find this complaint and make the corrections.

Allan

-----Original Message-----
From: Tinsay, Genevieve@DFEH
Sent: Tuesday, May 17, 2011 11:03 AM
To: Vessigault, Dominic@DFEH
Cc: Pederson, Allan@DFEH; Wong, Jason@DFEH
Subject: corrected complaint

I received telephone call and email from Rona Young.
Today, I also received her signed complaint.
Please send her a corrected mail for signature, Because she wants to add leg on paragraph
III.
Thank you.

-----Original Message-----
From: Rona Young [mailto:youngideals.rona@gmail.com]
Sent: Monday, May 16, 2011 4:07 PM
To: Tinsay, Genevieve@DFEH
Cc: Rona Metro
Subject: Fwd: Complaint for Rona Young, Total Knee Replacement, Left Ankle and Left Arm
Ulnar Nerve not listed body parts

---------- Forwarded message ----------
From: Rona Young <youngideals.rona@gmail.com>
Date: Mon, May 16, 2011 at 6:52 PM
Subject: Complaint for Rona Young, Total Knee Replacement, Left Ankle and Left Arm Ulnar
Nerve not listed body parts
To: Dominic Vessigault <dominic.vessigault@dfeh.ca.gov>, allan.pederson@dfeh.ca.gov
Cc: Rona Metro <youngideals.rona@gmail.com>


Mr. Pederson,

I signed and mailed the complaint that is attached via U.S. Postal Service Express Mail
today.  Thank you and your staff for initiating the written complaint and for all the work
that Mr. Vessigault completed on intake.

I did notice that the body parts listed under Item III. did not include my total knee
replacement surgery which is when Dr. Adams called me in the hospital to inform me that he
was eliminating my position [four days after surgery].

I also had additional work related injuries:

left arm ulnar nerve transposition surgery in December 2007 [work related],

liver surgery in May 2008  [not work related, had colon cancer in 1999 and doctor thought

the cancer came back but it was tumors from too many steriod injections to cope with 2003 back injury pain], and

in December 2003 as a result of a back injury my sciatic nerve issues caused my left leg to collapse and my ankle broke resulting in four surgeries  [work related].

The particulars are:
I.      I was denied a reasonable accommodation in January 2010 and constructively terminated on May 7, 2010 which forced me to retire on November 10, 2010. I was hired as a Public Information Officer in February 1994 and earning $5,600 a month.

II.     Mr. Greg Valentine, Risk Manager, told me that the reasonable accommodation (the ability to use a motorized wheelchair at work) was denied by Dr. Robert Adams, President of Merritt College, Karen Ulrich, Human Resources Manager and himself, Greg Valentine.

III.    I believe that I was denied a reasonable accommodation, and constructively terminated because of my disability

 (spine, shoulder and hands, left leg [broken as result of spine injury], left arm ulnar nerve transposition and right leg total knee
replacement) for the following reasons:


A. On May 7, 2010, I was denied the ability to use a wheelchair at work. My doctor's note dated October 2010 indicating my ability to go back to work with a reasonable accommodation (the use of a motorized
wheelchair) was ignored.

B. The denial of my request for a reasonable accommodation forced me to constructively terminate my employment and forced me to take my retirement on November 10, 2010.

C. I could have performed the essential job functions with this minimal accommodation.

# PROGRESS MEMO

**TO:  DFEH LEGAL DIVISION**                           **DATE: February 24, 2012**

**FROM:  Jennifer Ramos, Sacramento Employment District Office**

**Case Name: Young, Rona v. Peralta Community College District Filing Date:  May 17, 2011**

**Case Number: E201011M1616-00-lpe**          **EEOC/HUD Number: 37AB108514**

**RECOMMENDATION:  ISSUE ACCUSATION**

I.   NATURE OF COMPLAINT:

Complainant, Rona Young, was hired as a Public Information Officer on November 1, 1994 at Merritt College. Complainant alleged she was denied a reasonable accommodation in January 2010 and May 7, 2010, to use a motorized wheelchair at work.  Complainant further alleged that the denial of her request for reasonable accommodation forced her to constructively terminate employment and take her retirement on November 10, 2010.  Complainant alleged discrimination on the basis of disability (spine, shoulder, & hands).

II.   RESPONDENT'S DEFENSE:

Respondent, Peralta Community College District et al, denied Complainant's allegations of discrimination. According to Respondent, Complainant verbally inquired about a reasonable accommodation for a work injury incurred on August 25, 2009, through the District's Director of Risk Management, Gregory Valentine.  Respondent indicates Complainant went through total knee replacement surgery on May 4, 2010, and that while she was recuperating, Mr. Valentine was apprised of a request for a motorized wheelchair to assist her in returning to work while under modified duty restrictions.  Respondent asserts Mr. Valentine, York Claims Administrators, and the President of Merritt College, Dr. Robert Adams, all concurred that providing Complainant with a motorized wheelchair during her recovery from surgery presented a health hazard to her safety including her temporary recovery time, her acclamation period to learn to use a new wheel chair along with the hazardous and uneven terrain of the Merritt campus which could pose a safety hazard to her.  Respondent indicated the accommodation recommended was for Complainant to continue her surgical recuperation at home on 100% Industrial Leave with full pay.  Respondent contends that the denial of the use of a motorized wheelchair while she was recuperating had no impact on her employment status as the denial was limited to the temporary disability period from her surgery.  In addition, Respondent asserts Complainant started the retirement process prior to her reaching a maximum medical improvement (MMI) on October 28, 2010, and her actual retirement date was November 11, 2010.

Young v. Peralta
E201011M1616-00-1pe
Page 2 of 5

## III. BASIS FOR RECOMMENDATION:

### Jurisdiction:

Jurisdiction established. The case was filed timely, filed date May 16, 2011, (within 1 year from last occurrence November 10, 2010), against a covered Complainant and covered Employer, with a covered basis (disability – spine/shoulder/knee/hands).

### Discrimination:

Denied Reasonable Accommodation; Constructive Termination

Issue Questions:



**Relevant Question:** Is the Complainant disabled as defined under FEHA?

**Evidence for Complainant**
Complainant provides medical (Exhibit 1, 2).

**Evidence for Respondent**
████████████ Respondent provides medical (Exhibit 3, 4).

**Relevant Question:** Did the Complainant notify Respondent about his/her disability and request for reasonable accommodation? Is there a causal connection to request & disability?

**Evidence for Complainant**
Complainant provides evidence in support of notice to Respondent of her disability and request for reasonable accommodation, Complainant's use of a motorized wheelchair at work. ████████
████████████████████████ reasonable accommodation (Exhibit 1, 2).

**Evidence for Respondent**
████████ Respondent provides evidence in support of notice by Complainant of her disability and request for reasonable accommodation to use a motorized wheelchair at work (Exhibit 3, 4, 5, 6, 7).

**Relevant Question:** Did the adverse employment action occur? Was Complainant denied a reasonable accommodation?

**Evidence for Complainant**
Complaint provides evidence in support of a denial of her reasonable accommodation request for use of a motorized wheelchair at work (Exhibit 1, 2).

Young v. Peralta
E201011M1616-00-1pe
Page 3 of 5

### Evidence for Respondent

███████████ Respondent provides evidence in support of their denial of Complainant's reasonable accommodation request for use of a motorized wheelchair at work (Exhibit 3, 4, 5, 6, 7).

#### Affirmative defense:

#### Evidence for Complainant

Complainant alleged could have performed essential functions of her job with this minimal accommodation to use motorized wheelchair at work (Exhibit 1, 2).

~~Evidence for Respondent~~

~~Respondent alleged denied accommodation due to danger to Complainant's health and safety (Exhibit 3, 4, 5, 6, 7).~~

████████████████████████████████████████████

## IV.   CHRONOLOGY OF EVENTS RELEVANT TO ANALYSIS:

| | |
|---|---|
| 8/25/2009 | Work injury – chair breaks & Complainant (C) falls to floor injuring right knee/lower extremity/upper right extremity/back – WC claim filed |
| 1/3/2010 | Treating Physician (PTP) Jacob Rosenberg Note – TTD unless accommodation met. Need scooter or motorized wheel chair to get around campus. |
| 1/14/2010 | Email Greg Valentine Director Risk Mgmt – effective immediately C considered off work on full industrial leave; working w/ claims to evaluate any required accommodation once C returned to full duty; not aux to work from home because may compromise doctor's orders & recovery. |
| 3/2/2010 | PTP Jacob Rosenberg Note – semisedentery with wheelchair powered no lifting 15lbs. if not available TTD thru 4/2/2010. |
| 3/8/2010 | Gregory valentine email reasonable accommodation denial until permanent & stationary (P&S) or maximum medical improvement (MMI) due to safety hazards, temporary use of motorized wheelchair |
| 3/29/2010 | PTP Jacob Rosenberg Note – TTD thru 5/15/2010 unless sedentary position w/ wheel chair as previously written available |
| 5/24/2010 | Total knee replacement surgery |
| 5/25/2010 | Public info officer positions eliminated lack of funds |

| 5/28/2010 | Layoff notice to C – option of reassignment to same position college of Alameda or reemployment list. |
|---|---|
| 8/15/2010 | C transfer position to College of Alameda |
| 10/28/2010 | MMI reached by C per Respondent based on Ortho Dr. Thomas Peatman report – C P&S, cannot go back to work, no prolonged walking, no stooping, no heavy lifting, future medical, she should start retraining. |
| 11/9/2010 | C notifies Respondent that she elects to retire effective 11/10/2010 |

## V.   REMEDY COMPUTATION

Complainant seeks monetary damages totaling $1,045,008.00.   Complainant indicates she was forced to retire at the age of 52 years but would have lawfully retired at the age of 67 years. Complainant is a single parent raising a 13 year old.  Complainant requests monetary damages for 15 years of wages from her actual to her intended retirement at $5805.60 per month earnings which equates to $1,045,008.00.


APPROVED: _____     DATE: _2/28/2012_
                District Administrator

Young v. Peralta
E201011M1616-00-1pe
Page 5 of 5

## LIST OF EXHIBITS

| Exhibit | Number |
|---|---|
| Complainant's Information (including Medical) | 1 |
| Intake | 2 |
| Respondent's Response | 3 |
| Medical (Respondent) | 4 |
| Reasonable Accommodation Correspondence | 5 |
| Job Duty | 6 |
| Reasonable Accommodation Policy | 7 |

DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
CASE DIARY

Case #:   E201011M1616-00-Lpe          Federal No. 37AB108514

Complainant   YOUNG, RONA
Respondent    PERALTA COMMUNITY COLLEGE DISTRICT

| Complainant Representative | | Respondent Contact Person | |
|---|---|---|---|
| Name | | Name | Trudy Largent, j.d. |
| Title | | Title | Vice Chancellor for HR & Employee Relations |
| Firm | | Company | PERALTA COMMUNITY COLLEGE DISTRICT |
| Address | | Address | 333 East Eighth Street |
| City | | City | Oakland |
| State | Zip | State  CA  Zip  94606- | |
| Phone | Fax | Phone  510-466-7200  Fax | |

Complaint Filed  05/17/2011              PDS   01/27/2012

Served/Opening Letter   06/02/2011
                                          Return Receipt Received/Green Card    06/06/2011

150-Day Letter Sent  10/17/2011          Response Received   08/24/2011

240-Day Letter Sent  01/19/2012          Response Received Extension Date      / /

   -Day Letter Sent    / /               Response Reviewed w/Complainant   01/27/2012

CP Address/Change of Address             14-day letter Sent      / /

Address  131 Royal Crest Drive          To Mediation   / /        To Legal    / /
City      Columbia                      Returned       / /        Returned    / /
State    CA      Zip  29229-            HUD Letter     / /    Type of Letter
Home Phone  803-446-4823
Msg Phone

                    Total Case Processing Time     12.75

| DATE | CASE ACTIVITY | | |
|---|---|---|---|
| 01/13/2011 | Intake Interview<br>User ID:    EVESSIGD | Time:   2.00 | |
| 06/02/2011 | Complaint served certified mail<br>User ID:    MTINSAYG | Time:   0.25 | |
| 08/09/2011 | Mailed DFEH 200-07 ten day letter for R to respond<br>User ID:    MTINSAYG | Time:   0.25 | |
| 08/24/2011 | RECEIVED RESPONSE<br>User ID:    MNICOLAB | Time:   1.25 | |
| 01/19/2012 | case reassigned per da<br>User ID:    ERAMOSJ | Time:   0.25 | |

Continued Case Diary: E201011M1616                                    Page  2

| DATE | CASE ACTIVITY | | | |
|------|--------------|--|--|--|
| 01/27/2012 | ph intv w/ cp & dfeh j. palefsky - review / case update | | | |
| | User ID: | ERAMOSJ | Time: | 1.00 |
| 01/27/2012 | concil discussed cp & dfeh j. palefsky | | | |
| | User ID: | ERAMOSJ | Time: | 0.50 |
| 02/10/2012 | case consult d/a; case transferred/reassigned | | | |
| | User ID: | ERAMOSJ | Time: | 0.50 |
| 02/13/2012 | vmm left rp re: conciliation | | | |
| | User ID: | ERAMOSJ | Time: | 0.25 |
| 02/13/2012 | concil discussed w/ cp | | | |
| | User ID: | ERAMOSJ | Time: | 0.50 |
| 02/16/2012 | review case evidence/draft chronology | | | |
| | User ID: | ERAMOSJ | Time: | 1.00 |
| 02/16/2012 | email to cp w/ med/releases req response | | | |
| | User ID: | ERAMOSJ | Time: | 0.75 |
| 02/16/2012 | email fr cp w/ med/releases & addl info | | | |
| | User ID: | ERAMOSJ | Time: | 0.75 |
| 02/21/2012 | email fr cp req update on settlement status; response to cp's email | | | |
| | User ID: | ERAMOSJ | Time: | 0.50 |
| 02/24/2012 | prep case for case consult w/ da/legal | | | |
| | User ID: | ERAMOSJ | Time: | 0.50 |
| 02/24/2012 | case consult w/ legal & da | | | |
| | User ID: | ERAMOSJ | Time: | 1.00 |
| 02/24/2012 | prep case for legal; draft progress memo, chrono, etc. | | | |
| | User ID: | ERAMOSJ | Time: | 1.50 |

Case Diary:      E201011M1616

## Case Time Break Down

| | |
|---|---|
| Intake | 2.00 |
| Investigation | 5.25 |
| Negotiation/Settlement | 1.75 |
| Caseload Management | 0.00 |
| Report Writing/Case Closure | 1.50 |
| Case Consultation | 1.75 |
| Clerical Activity | 0.50 |

# RECOMMENDATION FOR CLOSURE

**TO:** REGIONAL ADMINISTRATOR, Kate Riley

**FROM:** CONSULTANT, Jennifer Ramos

**DATE:** May 15, 2012
**CITY:** Oakland
**COUNTY:** Alameda
**FILED DATE:** May 17, 2011
**SERVICE DATE:** June 2, 2011

CASE NUMBER:   E201011M1616-00-lpe

CASE NAME:   **Young/Peralta Community College**

EEOC/HUD NUMBER: 37AB108514

NATURE OF COMPLAINT:

| B E N E F I T S * | Persons Benefited | |
|---|---|---|
| | a. Settlement | $ |
| | b. Annualization | $ |
| | Total (a + b) | $ |
| | Benefit Codes | |

**BASIS:**   Disability

**DATE OF HARM:**   Jan 2010-May 2010      **HARM:**   Denial of Accommodation

**DATE OF HIRE:**   November 1, 1994      **POSITION:**   Public Information Officer

**RECOMMENDATION:**   (Check one)
01 No Jurisdiction

**DISPOSITION:**

APPROVED: _____
                    Regional Administrator

BY: _____

DATE: 5/15/12

met.  Placed on full industrial leave with full pay

- **May 4, 2010- Total knee replacement surgery**

- **May 7, 2010- Alleged constructive termination/denial of motorized wheelchair.  Use of wheelchair determined to be a health hazard to Young's safety**

- **May 25, 2010- Board Resolution to eliminate position at Merritt College**

- **May 28, 2010- layoff letter informing Young of reassignment rights to same position at College of Alameda or reemployment list for 39 months for first available position**

- **August 15, 2010- Young elected transfer to PIO position at College of Alameda**

- **October 28, 2010- Young Doctor's medical evaluation  of "MMI" and that Young could not go back to work**

- **November 9, 2010- Elected voluntary retirement, CalPers disability retirement**

- **May 16, 2011- Filed DFEH Complaint**

- **June 2, 2011-Notice to District of Complaint**

- **August 23, 2011- District Response to Complaint**

STAFF   ASSISTANT  ~ MARKETING

# EEOC DISCUSSION LOG

**Date:** January 8, 2014                          **Investigator:** Malinda Tuazon

**Conference with:**    Rona Young                                **In-person** ___ **Phone** ___

**Case:**  Young v. Peralta Community College District

**Charge Number:** 37A-2012-08514

**Notes:**

How was CP harmed if she was on Temporary Total Disability?
*The TTD was only before I had surgery. Right after my surgery, they called me and said my position was eliminated. Then because they wouldn't accommodate me, I had to retire.  The insurance company told me they wouldn't accommodate me after I was permanent and stationary.*

How did her inability to return to work because of R's failure to accommodate relate to her position being eliminated (all public info officer positions eliminated, not just CP's)?
*They only eliminated three Public Information Officer positions.  The reason why only three were eliminated was that the other person was more senior than me.  I was supposed to go to Laney College but they eliminated that position too.*

DFEH notes state 8/15/10, CP transferred positions (on paper) to College of Alameda—why didn't CP stay in that position?
*I retired because the way our union contract is written is that if they don't accommodate you, you will lose your lifetime medical and your privileges to come back to work. They knew if they didn't offer my accommodation and the doctor said I was permanent and stationary, they would say they no longer had a position available for me.  R basically forced me to retire so I wouldn't lose my benefits.*
*They have no documentation that they ever offered me the accommodation at College of Alameda.*

Why did she retire before her condition had reached maximum medical improvement?

*I retired in November and the permanent and stationary doctor's note was in October.  What I know from talking to Scott Doughtie is that they are saying I retired before they could offer me accommodations.  There are no letters saying they would accommodate me.  No one ever returned my calls or answered my emails or letters.*

*Dr. Peatman's report of permanent and stationary was in October and I didn't retire until November and that was only because they wouldn't accommodate me.*

**Investigator to follow-up with:**

Review the case file and ask R for documentation that it offered CP an accommodation before she retired.

**Respondent/CP/Other to follow-up with:**

CP sending emails and permanent and stationary report to show she requested accommodation.

## MEMORANDUM

To:         Michael Baldonado, District Director
Through:    Deborah Randall, Enforcement Manager
Through:    Scott Doughtie, Enforcement Supervisor  — SHO - 8/28/14
From:       Malinda Tuazon, Senior Investigator
Date:       August 14, 2014
Re:         Pre-Determination Interview: 37A-2011-08514 Young v. Peralta
Community College District

On August 14, 2014, I DI'ed CP. I explained that R was entitled to deny temporary use of a motorized wheelchair prior to her surgery because her doctor gave R the option to place her on Temporary Total Disability (TTD) if she could not be accommodated by using the motorized wheelchair. CP stated that this denied her the ability to earn a livelihood and I asked whether CP was paid her full salary while on TTD. She stated she was. I explained that this may not have been the accommodation of CP's choice, but that an employee is not necessarily entitled to the accommodation of choice. I attempted to offer CP another example, but she cut me off and stated that R had no reason to deny her use of a wheelchair because the campus is accessible and has a thousand students who are wheelchair bound. I repeated that even if R did not have a justifiable reason to deny her use of a wheelchair or was paternalistic in considering its use to be a potential safety hazard, because CP's doctor gave R the option of TTD or wheelchair, R was allowed to choose between those options.

I went over the timeline with CP and confirmed that she was not released to work until 8/26/10 when she emailed R a note stating she could return to desk duties for 4 hours a day and that on 9/3/10 CP's doctor took her off work again. CP stated that her doctor took her off work because R denied her reasonable accommodation. I asked CP if she ever received confirmation from R whether they granted or denied the 4 hour a day request for accommodation. CP stated repeatedly that they never communicated with her after her email on 8/26/10. I asked CP again whether she ever received notification that her accommodation request was denied. She stated neither she nor her doctor received any information from R for months until CP retired because she felt it was her only way to keep her lifetime medical benefits. I told CP R provided an internal email on 8/31/10 from Greg Valentine informing R's staff that he had approved her accommodation. CP stated that R never communicated that to her.

I told CP I was not denying that R never communicated with her. I explained to CP that when her doctor took her off work on 9/3/10, it changed her status and R had to respect the doctor's orders and allow her to remain on TTD. CP stated that if she had heard from R that they were willing to accommodate her, the doctor would not have taken her off work on 9/3/10. CP stated again that they never contacted her or her doctor to tell them they were granting her accommodation. CP stated that nothing changed between the time she went on surgery and the time she retired—that R repeatedly denied her accommodations. I explained to CP that based on her doctor's notes, her status had

indeed changed—on 8/26/10 she was eligible to return to work pending authorization
from R that she would be allowed to work a 4 hour a day schedule. CP again stated they
never communicated that to her. I explained to CP again that R was not required to ask
the doctor to change his recommendation or tell the doctor it would have welcomed CP
back to work. Once CP's doctor stated that she was to be off work on 9/3/10, it changed
the nature of her accommodation from a 4 hour a day schedule back to extended TTD.
CP stated that this was not what her doctor intended to say; her doctor intended to say she
could return to work if they would accommodate her. I explained to CP that this was not
what the doctor wrote. I explained that the note, in fact, stated that she was taken off
work pending medication trial and physical therapy. CP stated that this only meant she
was changing pain medication. However, I explained to CP that reading the note, it
appeared that her doctor was taking her off because of the medication trial and not
because she wasn't being accommodated. I explained to CP that her doctor had
previously written a note giving R an option to accommodate her or put her on leave, so
there is no reason the doctor could not have done that in this circumstance. CP again told
me R never communicated with her or her doctor and asked if a note clarifying what her
doctor meant would help her case. I told her it would not because I can only consider the
evidence in the file and the evidence she presented to R, interpreted in the most logical
sense.

(b) (5)                                                                         I
explained that I was not denying that R never communicated with her. I explained that as
soon as CP's doctor took her off work on 9/3/10, R was allowed to pause the interactive
process of determining whether the 4 hour a day work week would be feasible (which R
had already determined it was) and was able to, if not required to, honor her doctor's
request that she be accommodated in a different way. I asked CP again if she ever
received confirmation that her accommodation was actually denied. She said she never
received anything over the phone or in writing about approval or denial. She stated her
doctor took her off on 9/3/10 because her accommodation was denied. I asked if her
doctor ever received notification that it was denied and she stated he did not. I explained
to CP that it was not unreasonable for R not to have gotten back to her within a week
(between 8/26/10 and 9/3/10) to advise her whether her request was granted or denied.
When her first request for accommodation was made on 1/29/10, it took Greg Valentine
until 3/8/10 to finally tell CP her preferred accommodation—using a motorized
wheelchair—was being denied and that R had selected the alternative accommodation of
placing her on TTD. I explained that CP understood that it took R a month and a half
before it responded to her request for accommodation. When CP assumed within one
week that her accommodation of a 4 hour a day work schedule was denied and asked her
doctor to take her out on TTD again, this was too early. I explained that had CP given R
a chance to respond to her, she might have learned that her accommodation was granted.
(b) (5)

    CP again stated that R never communicated with her and if they had told her at
any point that they would have welcomed her back with open arms if she received
doctor's clearance, she would have asked her doctor to take her off TTD. I explained that

NOT
STATED

R was not required to affirmatively request that CP return to work and that it had a duty to follow her doctor's orders.

CP stated she was off on TTD until her doctor declared her permanent and stationary on 10/28/10. CP explained that he didn't really know what he was doing because he was fresh out of the military and was only going to the book which said a person had to be permanent and stationary in 6 months. CP stated this was an error and a subsequent doctor found her to not be permanent and stationary. By that time, however, CP had already retired. I asked CP to look at the 10/28/10 report from her doctor stating that she was permanent and stationary and explain to me why, if the doctor stated she could not return to work and recommended retraining, would she think this was an indication that she could return to her position. CP did not answer my question but instead repeated that R never contacted her.

**NOT TRUE** (handwritten annotation)

CP asked what my bottom line was. I told CP I planned to make a no cause recommendation because there was no evidence to support that R violated the law. In fact, R complied with all of CP's doctor's requests and granted her accommodations. CP stated that they denied her accommodation in March 2010 and I repeated that they denied one of her requests but provided an alternative accommodation, TTD, which was authorized by her doctor. CP stated this amounted to denying her accommodation. I explained that R was allowed to provide an alternative accommodation and that CP was not entitled to the accommodation of her choice. CP stated that I was siding with R. I explained that I am a neutral fact finder and have reviewed all the evidence and the evidence does not demonstrate that there is a violation of the law.

**NOT TRUE INTERNAL MEMO NEVER CONVEYED TO ME** (handwritten annotation)

CP asked me to cite where in the law it says how long an employer is allowed to wait before responding to an employee who requests a reasonable accommodation. I explained that because every case of accommodation is different, there is no timetable established by law. I explained to CP, however, that because she knew R had taken up to a month and a half the first time, it was not unreasonable for her to expect that they would take that much time again and because her doctor took her off work before R confirmed whether it was going to grant or deny her accommodation, CP essentially negated her first request for accommodation.

**NEVER CONVEYED AUGUST 30 DECISION TO RONA** (handwritten annotation)

CP asked what the next steps were. I explained that I would be sending my recommendation to my supervisors and they would review it and the NRTS would ultimately be issued by the District Director. CP asked if it was an actual review or just a rubber stamp process. I explained that my supervisors would actually review my recommendation. CP asked what would happen if they disagreed with me and I told her they would remand the case for further investigation. CP asked why I was not giving her the opportunity to provide further information in the form of her doctor's note clarifying his statement. I explained that I had already given CP ample opportunity to provide evidence she believed supported her position and that the doctor's note would not be relevant to the evidence because R had to determine what the request was based on what the doctor said, not try to assume what he meant.

9

CP said, "God Bless You, Ms. Tuazon" three times and I asked her if she wanted me to explain the NRTS process. She asked me to email it to her because she was having a panic attack. CP stated, "God  Bless You, Ms. Tuazon" again and hung up the phone.

16

## MEMORANDUM

To:        Michael Baldonado, District Director
Through:   Deborah Randall, Enforcement Manager
Through:   Scott Doughtie, Enforcement Supervisor  – 8/28/14 – SHD
From:    Malinda Tuazon, Senior Investigator
Date:     August 20, 2014
Re:       Pre-Determination Interview: 37A-2011-08514 Young v. Peralta
Community College District

On August 20, 2014, I DI'ed CP for the second time. I told CP I had read all of the documents she sent me on August 15, 2014. She had specifically pointed to Page 18 of her PDF which shows that R did not receive her 9/3/10 note which took her off work again until 9/13/10. CP stated that this showed that if R had made the decision to accommodate her on 8/31/10 it had enough time to notify her that she would be accommodated. I explained to CP that I had to look at the other instance where she requested accommodation and in that situation, in January 2010 when she had requested use of a wheelchair, it had taken R over 6 weeks to get back to CP. In this case, CP only gave R 2 weeks before she changed her status to off work. I explained to CP that when her doctor took her off work in the 9/3/10 note, that changed her request for accommodation from returning to work for 4 hours a day to requiring more leave. CP stated that R should have reached out to her while she was on leave to tell her she would be accommodated when she was ready to come back. I explained to CP that R was not required to take affirmative steps like that; all R had to do was accommodate each accommodation request as they came and R did that.

CP began to yell at me and I asked her to lower her voice. CP stated that she was on speaker phone recording our conversation and taking notes in a cathedral ceiling room so it only sounded like she was yelling. I thanked CP for that explanation.

CP asked me to provide her something that would help her understand my position. I explained that in the past, the most recent time she requested an accommodation, it took R 6 weeks to get back to her. I explained that CP was aware that it took R 6 weeks to get back to her. CP stated that I was putting words in her mouth in that I was saying she was fine with R taking 6 weeks to get back to her. I explained that this was not my position, my position was that the evidence showed that R took 6 weeks to get back to her. I explained that there is no set amount of time required by law during which an employer must respond to an employee who makes a request for accommodation. CP asked why there was no law. I explained that every accommodation situation is different and that the time it takes to respond to a request for accommodation depends on the complexity of the request, the personnel involved in making the request, and several other factors. CP stated that she did her due diligence in providing her doctor's notes. I told CP I was not in any way disputing that. I explained that based on the last time CP requested an accommodation and was not notified of the outcome until 6 weeks later, it was reasonable that R took longer than the 2 weeks she gave to respond to

her request. CP stated that this was just my opinion and it was not reasonable. I explained that I based that opinion on the evidence. CP stated that one occurrence does not set precedent and told me I had to look at every instance of her requesting accommodation because several times in the past she had received notice more quickly. I asked CP who the decision makers were in those situations. She stated that under a different, female decision maker, she had received faster responses. I explained that I needed to look at the situations where the same decision makers were taking action because different decision makers often have different standards. CP stated that she did not understand how this was possible and asked me to explain it to her. I offered CP an example of a situation where a person receives stellar evaluations for a period of time and then a new supervisor comes in and starts issuing negative evaluations. I explained that what the EEOC must analyze is whether the poor evaluations are based on the employee's race or gender or age or disability or just based on the different standards the new supervisor had. I explained that different people are allowed to have different standards. CP began to yell again. She stated that I needed to give her an example where someone was requesting an accommodation for a work related injury because I was insulting her intelligence by giving an example of an evaluation. CP stated that I was minimizing her experience by talking to her about an evaluation. I explained that I was trying to give CP an example that I thought would help and apologized if she thought I was insulting her intelligence. I explained to CP that every request for accommodation is different and, accordingly, comes with different standards. CP asked me to point to where in the law it says every accommodation is different and that employers are allowed to have different standards. I explained that there is no specific law that states that, only the laws that require employers to engage in the interactive process. CP stated that she is not attorney but she is not stupid and she doesn't understand how I can side with the State. She stated that I am working for the State and so I am obviously siding with them. I explained to CP that I am a neutral federal employee. CP stated, "whatever." I explained to CP that I was basing my recommendation on the evidence and CP stated there was no evidence to show she had not done her due diligence. I explained to CP that I was not questioning whether she did her due diligence. CP stated that R had not established the standard of care it needed to show her with respect to notifying her that it would grant her accommodation. I explained to CP that this was the precise reason I was looking at the response time for when Greg Valentine was the decision maker because that established a reasonable timeline for R to respond to CP's request for accommodation. CP stated that this was not the standard of care.

CP told me I was ignoring her first denial of accommodation. I told CP we had addressed that issue in our last call but that I was happy to revisit it. CP stated that we had not discussed it and that she wanted to talk about why R was allowed to deny her use of a wheelchair after her January 2010 request. I explained to CP that her doctor provided R with two options: allow CP to use a wheelchair or allow her to take leave under the Total Temporary Disability program. CP stated that there was no reason she could not have used a wheelchair because there were students and other employees who were allowed to use them whether they were deaf, dumb, or blind, or disabled. I explained to CP that R was allowed to choose between the two options her doctor provided even if it was an unfair or unjustified rationale. CP stated that R had no

12

justification for denying her use of a wheelchair. I explained that this question would have been relevant if her doctor had only provided R with the request for use of a wheelchair but because R provided two options, R was allowed to pick one. CP stated that this was simply untrue and that was not what her doctor meant. I told CP I could not base a recommendation on what she says the doctor meant, but only on what the doctor actually wrote in his notes. CP stated that this was unfair and asked how I could evaluate a workers' comp case like this. I told CP workers' comp is outside the laws we enforce so I would not be discussing it. I told CP that while they relate to similar things, the workers' comp case is distinct from her reasonable accommodation case and that I would only be able to discuss the latter. CP stated that she was entitled to full pay because of her workers' comp case. Again, I told CP I could only discuss her reasonable accommodation issues.

CP stated that I was doing her a disservice and that this was far more egregious than what R did to her. She stated that I did not care about her case. CP repeated that I did not care and I was only trying to get rid of her case so I could focus on the other 42 cases in my hopper. I told CP I care and I am sorry she feels that way. CP stated I am not sorry and that I am siding with R because I work for the State. CP stated that she, as a black woman, is receiving the same treatment all black women have received. I told CP I was not basing my recommendation on her race or gender but on the evidence in the case file. CP stated that I do not care and I am a terrible human being for not caring about people. I told CP I am very sorry she feels that way.

CP asked who my supervisor is and I told her it is Scott Doughtie, who she has been copying on the emails she sends to me. I told CP that he would review this case and then his supervisor would review the case and ultimately, the District Director would make the decision about whether to issue the NRTS. CP stated that she didn't need to hear that information, that I had already told her that. Again, CP stated that I didn't care. CP began to cry. She stated that she had been injured so many times on the job and listed the surgeries she has had. CP stated that I was committing an egregious violation by siding with R. I explained that I am not siding with any party, but that the evidence does not support a finding that R failed to accommodate her. CP stated that she did her due diligence and that I had not. CP stated that I told her she had "jumped the gun" in having her doctor take her off work and then retiring. I explained that based on her previous experience, it was not unreasonable for R to have taken more than the 2 weeks she gave them to respond to her request for accommodation. CP stated that I needed to look at the totality of the circumstances and whether R had established its standard of care. CP stated that I was not interested in looking at the evidence.

I told CP that if the District Director issues the NRTS, she will have 90 days to file a lawsuit in federal court. CP stated that she knows that. I asked CP if there was anything else I could do to help her explain the rationale behind my recommendation or if she had any other questions. CP stated that I did not care. I told CP I am sorry she feels this way. CP hung up the phone.