# EXHIBIT H



**U.S. Equal Employment Opportunity Commission**
**San Francisco District Office**

450 Golden Gate Avenue
5 West, P.O. Box 36025
San Francisco, CA 94102
(415) 522-3000
(415) 522-3152 TTY
(415) 522-3415 FAX

Rona Young
131 Royal Crest Drive
Columbia, SC 29229

Re: FOIA No.: 5502014207779                                    September 05, 2014
Charge No. 37A-2011-08514 Rona Young vs. Peralta Community College District

Dear Ms. Young:

Your request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, received by the San Francisco District Office on September 05, 2014 is assigned the above FOIA number. It will be processed by Vincent Clark who can be reached at (415) 522-3144.

[X]EEOC will issue a determination on your request on or before October 03, 2014. FOIA and EEOC regulations provide 20 working days to issue a determination on a request, not including Saturdays, Sundays and federal holidays. In unusual circumstances, EEOC may extend the 20 working days by 10 additional working days or stop processing your request until you respond to our request for fee or clarifying information. Should EEOC take an extension or stop processing your request, notice will be issued prior to the expiration of the 20 working days.

[ ] Your unperfected request under the FOIA was received on September 05, 2014. The request will **not** be assigned for processing until it is perfected by the submission to this office a copy of a "Filed" marked court Complaint on the above charge. Failure to submit a copy of the "Filed" marked Complaint within 30 days of your receipt of this letter may result in the administrative withdrawal of your request. Upon receipt of the "Filed" marked Complaint, your request will be perfected and processing will begin. At that time, EEOC will issue a letter acknowledging receipt of your perfected FOIA request, providing the name of the person who will be processing your request, and the date by which you may expect to receive a response from me.

You may contact the Requester Service Center for status updates on your FOIA request or for FOIA information by telephone to (877) 869-1802, or by mail to the EEOC, Requester Service Center, 131 M Street NE, Suite 5NW02E, Washington, DC 20507. Additionally, if you submitted your FOIA request on line, you may monitor its status at https://egov.eeoc.gov/foia/.

Cordially,

Michael P Connolly
Deputy Director
(415) 522-3606
Sanffoia@eeoc.go

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
SAN FRANCISCO DISTRICT OFFICE
THE PHILLIP BURTON FEDERAL BUILDING
450 GOLDEN GATE AVE. 5 WEST
PO BOX 36025
SAN FRANCISCO, CA 94102-3661

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

AN EQUAL OPPORTUNITY EMPLOYER

Rona Young
131 Royal Crest Drive
Columbia, SC 29229



**U.S. Equal Employment Opportunity Commission**

**San Francisco District Office**

450 Golden Gate Avenue

5 West, P.O. Box 36025

San Francisco, CA 94102

(415) 522-3000

(415) 522-3152 TTY

(415) 522-3415 FAX

1365 pages

Rona Young
131 Royal Crest Drive
Columbia, SC 29229

Re: FOIA No.: 5502014207779                November 3, 2014
Charge No. 37A-2011-08514 Rona Young vs. Peralta Community College District

Dear Ms. Young:

Your Freedom of Information Act (FOIA) request, received in this office on September 05, 2014 has been processed. Our search began on September 05, 2014. All agency records in creation as of May 17, 2011 are within the scope of the EEOC's search for responsive records. The paragraph(s) checked below apply:

[ ]            Your request does not reasonably describe the records you wish disclosed or [  ] No records fitting the description of the records you seek disclosed exist or could be located after a thorough search. The remainder of your request is:

[ ]            Your request is granted.

[ ]            Your request is denied pursuant to the subsections of the FOIA indicated at the end of this letter. An attachment to this letter explains the use of these exemptions in more detail.

1

[ ]             See attached Comments page for further information.

Sincerely,

Michael P Connolly
Deputy Director
(415) 522-3606
sanffoia@eeoc.gov

Applicable Sections of the Freedom of Information Act, 5 U.S.C. § 552(b):

[  ] (2)                                                    [ X ] (6)

[  ] (3)  (A)(i)                                            [  ] (7)(A)

    [  ] Section 706(b) of Title VII              [  ] (7)(B)

    [  ] Section 709(e) of Title VII              [  ] (7)(C)

    [  ] Section 107 of the ADA                    [  ] (7)(D)

    [  ] Section 207 of the GINA                   [  ] Other (see attached)

[  ] (3)(A)(ii)

    [  ] 41 U.S.C. §253b(m) of the

National Defense Authorization  Act

[  ] (4)

[ X ] (5)

3

[X]      Your request is granted in part and denied in part. Portions not released are being withheld pursuant to the subsections of the FOIA indicated at the end of this letter. An attachment to this letter explains the use of these exemptions in more detail.

[ ]      You must send a check for $[  ] made payable to the United States Treasurer by mail to the above address. Manual search and review time is billed per quarter hour based on the personnel category of the person conducting the search. Fees for search services range from $5.00 per quarter hour to $20.00 per quarter hour. Direct costs are billed for computer searches and in certain other circumstances. Photocopying is billed at $.15 per page. 29 C.F.R. §1610.15. The attached Comments page will further explain any direct costs assessed. The fee has been computed as follows:

  [  ]   Commercial use requests: [  ] pages of photocopying; [  ] quarter hour(s) of [  ] review time; and [  ] quarter hour(s) of [  ] search time; Direct costs are billed in the amount of [  ] for [  ].

  [  ]   Requests by educational or noncommercial scientific institutions or representatives of the news media: [  ] pages of photocopying. The first 100 pages are provided free of charge.

  [X]   All other requests: [ 1365 ] pages of photocopying on compact disc and [ 2 1/2 ] hour(s) of [  ] search time. Direct costs are billed in the amount of [  ] for [  ]. The first 100 pages and 2 hours of search time are provided free of charge.

[X]      The disclosed records are enclosed. No fee is charged because the cost of collecting and processing the chargeable fee equals or exceeds the amount of the fee. 29 C.F.R. § 1610.15(d).

[ ]      The disclosed records are enclosed. Photocopying and search fees have been waived pursuant to 29 C.F.R. § 1610.14.

[X]      You may appeal this decision by writing within thirty days of receipt of this letter to the Office of Legal Counsel, FOIA Programs, Equal Employment Opportunity Commission,

131 M Street, N.E., Suite 5NW02E, Washington, D.C. 20507. Your appeal will be governed by 29 C.F.R. § 1610.11.

2

Exemption (b)(5) to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(5) (2006), amended by OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, permits withholding documents that reflect the analyses and recommendations of EEOC personnel generated for the purpose of advising the agency of possible action. This exemption protects the agency's deliberative process, and allows nondisclosure of "inter-agency or intra-agency memorandums or letters which would not be available to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption covers internal communications that are deliberative in nature. National Labor Relations Board v. Sears, Roebuck & Co., 421 U.S. 132 (1975); Hinckley v. United States, 140 F.3d 277 (D.C. Cir. 1998); Mace v. EEOC, 37 F.Supp. 2d 1144 (E.D. Mo. 1999). The purpose of the deliberative process privilege is to "allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." Missouri ex. rel. Shorr v. United States Corps of Eng'rs., 147 F.3d 708, 710 (8th Cir. 1998).

Records may be withheld under this exemption if they were prepared prior to an agency's decision, Wolfe v. Department of Health and Human Services, 839 F.2d 768, 775, 776 (D.C. Cir. 1988) (en banc) and for the purpose of assisting the agency decision maker. First Eastern Corp. v. Mainwaring, 21 F.3d 465,468 (D.C. Cir. 1994). See also, Greyson v. McKenna & Cuneo and EEOC, 879 F. Supp. 1065, 1068, 1069 (D. Colo. 1995). Records may also be withheld to the extent they reflect "selective facts" compiled by the agency to assist in the decision making process. A. Michael's Piano, Inc. v. Federal Trade Commission, 18 F.3d 138 (2d Cir. 1994). An agency may also withhold records to the extent that they contain factual information already obtained by a requester through prior disclosure. See Mapother, Nevas, et al. v. Dept of Justice, 3 F.3d 1533 (D.C. Cir. 1993).

Re: FOIA No. 5502014207779

Exemption (b)(6) to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(6) (2006), amended by OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, permits withholding of information about individuals in "personnel and medical files and similar files" if its disclosure "would constitute a clearly unwarranted invasion of personal privacy." In addition to personnel records and medical files, the term "similar files" encompasses all information that "applies to a particular individual." Department of State v. Washington Post Co., 456 U.S. 595, 599-603 (1982). This exemption requires that the privacy interests of the individual be balanced against the public interest in disclosure. Department of the Air Force v. Rose, 425 U.S. 352, 372 (1976). In examining whether there is a "public interest" in disclosure of certain information, the "public interest" must truly be in the interest of the overall public. In United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989), the Supreme Court explained that only "[o]fficial information that sheds light on an agency's performance of its

statutory duties" merits disclosure under FOIA, and noted that "disclosure of information about private citizens that is accumulated in various governmental files" would "reveal little or nothing about an agency's own conduct."

Personal details pertaining to an individual are generally protected under this exemption. See, e.g., DOD v. FLRA, 510 U.S. 487, 500-502 (1994) (finding privacy interest in federal employees' home addresses even though they often are publicly available through sources such as telephone directories and voter registration lists); Pons v. United States Customs Service, No. 93-2094, 1998 U.S. Dist. LEXIS 6084 at **13-14 (D.D.C. April 27, 1998) (protecting identities of lower and mid-level agency employees who worked on asset forfeiture documents); Barvick v. Cisneros, 941 F. Supp. 1015 (D. Kan. 1996) (finding personal information such as home addresses and telephone numbers, social security numbers, dates of birth, insurance and retirement information, reasons for leaving prior employment, and performance appraisals protectable under Exemption Six). See also, Rothman v. USDA, 1996 Lexis 22716 (C.D. Cal. June 17, 1996) (disclosure of information in the applications of persons who failed to get a job may embarrass or harm them).

## DOCUMENTS WITHHELD PURSUANT TO EXEMPTIONS ABOVE:

1. Redacted Case Routing Sheet concerning Charge No. 37A201108514, Dated: N/A, one column of deliberative analysis redacted, Page(s) withheld: N/A, Exemption 5

2. Redacted Case Routing Sheet concerning Charge No. 37A201108514, Dated: N/A, one column of deliberative analysis redacted, Page(s) withheld: N/A, Exemption 5

3. Redacted Charge Detail Inquiry concerning Charge No. 37A201108514, Dated: 071212, Processing Category Code in two locations redacted from page 2 of 3,(no page 1 of 3), Page(s) withheld: N/A, Exemption 5

4. Redacted Enforcement Investigator's Recommendation Memorandum to Director concerning Charge No. 37A201108514, Dated: 081414, one column and two lines of pre-decisional, deliberative analysis and recommendations redacted from one page/s, Page(s) withheld: N/A, Exemption 5

5. Redacted Recommendation Memorandum to Regional Administrator concerning Charge No. 37A201108514, Dated: 051512, two columns of pre-decisional, deliberative analysis and recommendations redacted from one page/s, Page(s) withheld: N/A, Exemption 5

6. Redacted EEOC helpline email concerning Charge No. 37A201108514, Dated: 052912, one occurrence of email address redacted from one page for privacy, Page(s) withheld: N/A, Exemption 6

7. Redacted Enforcement Investigator's Recommendation Memorandum to Director via enforcement Supervisors concerning Charge No. 37A201108514, Dated: 081414, three lines of pre-decisional, deliberative analysis and recommendations redacted from one of four page/s, Page(s) withheld: N/A, Exemption 5

8. Redacted Progress Memorandum to DFEH Legal Division concerning Charge No. 37A201108514, Dated: 022412, fourteen lines of pre-decisional, deliberative analysis and recommendations redacted from two of five page/s, Page(s) withheld: N/A, Exemption 5

9. Redacted Respondent's Exhibit 'D' (two copies) Classification Letters to other employees concerning Charge No. 37A201108514, address for personal and proprietary information redacted from two pages , Dated: 052810, Page(s) withheld: N/A, Exemption 6

10. Enforcement Investigator's Unsigned/Undated draft Letter of Determination containing pre-decisional and

deliberative analysis concerning Charge No.37A201108514, Dated: Undated, Page(s) withheld: two, Exemption 5

11. Enforcement Investigator's Confidential Notes to File containing pre-decisional   deliberative analysis and thought process concerning Charge No. 37A201108514, Dated: 081214, Page(s) withheld: two, Exemption 5

12. Enforcement Investigator's Confidential Memo to Director via Supervisors containing pre-decisional deliberative analysis and thought process concerning Charge No. 37A201108514, Dated: 112013, Page(s) withheld: one, Exemption 5

13. EEOC Legal email response containing Review and  Advice  concerning Charge No. 37A201108514, Dated: 092613, Pages withheld one, Basis: Government Deliberative Process, Attorney-Work Product, Attorney-Client Information, Exemption 5

14. Enforcement Investigator's confidential memo to Director via Supervisors  Notes to File containing pre-decisional and deliberative analysis concerning Charge No.37A201108514, Dated: 091813, Page(s) withheld: one, Exemption 5

15. Enforcement Investigator's Unsigned draft Investigative Memorandum to Director containing pre-decisional and deliberative analysis concerning Charge No.37A201108514, Dated: 051413, Page(s) withheld: five, Exemption 5

16. Enforcement Investigator's Confidential Handwritten Notes to file containing pre-decisional   deliberative analysis and thought process concerning Charge No. 37A201108514, Dated: 030613, Page(s) withheld: five, Exemption 5

17. Enforcement Investigator's Confidential Handwritten Notes to file containing pre-decisional   deliberative analysis and thought process concerning Charge No. 37A201108514, Dated: 022513, Page(s) withheld: three, Exemption 5

# EXHIBIT I

Dec. 30. 2011 11:39AM   Pain and Rehab Ricoh Front Desk          No. 3763   P. 2/6



**Pain & Rehabilitative**
CONSULTANTS MEDICAL GROUP

**BABAK J. JAMASBI, M.D., F.A.C.P.M.**
Board Certified Pain Medicine
& Anesthesiology, QME

**BRENDAN P. MORLEY, M.D., F.A.C.P.M.**
Board Certified Pain Medicine
& Anesthesiology, QME

**TIMOTHY S. LO, M.D., M.P.H.**
Board Certified in Neurology
Pain Medicine, Medical Acupuncture, QME
Electrodiagnostic Medicine

**ERNEST Y. CHENG, D.O.**
Board Certified Pain Medicine & Physical Medicine and
Rehabilitation, QME
Sports and Performing Arts Medicine
Electrodiagnostic Medicine

**SONIA BELL, M.D.**
Pain Management Interventional Spine Fellow
Physical Medicine and Rehabilitation
Electrodiagnostics

**JESS H. GHANNAM P.h.D.**
Clinical Psychologist

**MARK PHILLIPS, PA, FNP, RN**
Physician Assistant

**SUSIE PAJK, PA-C.**
Physician Assistant

**JODY TOMIC, PA-C.**
Physician Assistant

Reply To:

OAKLAND OFFICE

6699 TELEGRAPH AVENUE, SUITE 202

OAKLAND, CA 94609

510-647-5101 – FAX: 510-647-5105

Other Offices:

CASTRO VALLEY

SAN FRANCISCO

WALNUT CREEK

## SUPPLEMENTAL MEDICAL/LEGAL REPORT

**RE:** YOUNG, RONA
**CL:** 07-9200-0032
**WCAB#:**unknown
**DOI:** 02/20/2007
**INSURANCE:** Southern California Risk Management
**EMPLOYER:** Peralta Community College District
**DATE OF SERVICE:** 12/11/2011

### INTRODUCTION
I am in receipt of a letter dated 10/03/11 from Arthur London, Sr. Claims Examiner in this case. Mr. London represents York Insurance.

Mr. London acknowledges receipt of my supplemental report dated 08/24/11.

Mr. London provided medical records through 10/08/10.

Mr. London asks that I address the following: *". . . if the patient is temporarily disabled, please advise for what date of injury, period of temporary disability and the body part she is temporarily disabled for."*

My retained medical file has been reviewed once again in the course and preparation of this Supplemental Report.

Pursuant to 8 Cal Code Regs. Sec. 9795 (b) and (c), I am submitting this report as an ML-106-95, Supplemental Medical-Legal Evaluation conducted by a Qualified Medical Evaluator. Subsequent to the issuance of my prior report(s), I have been asked to issue a Supplemental Report. I certify under penalty of perjury that the time involved in reviewing my prior report(s) and any additional medical records and/or other documentation was 1.5 hours and report preparation was .75 hours, for a grand total of 2.25 hours.

### REVIEW OF RECORDS
The following 1/4" of records were received and reviewed.

There are some records from Webster Orthopaedic Medical Group.

There are some records from Integrated Pain Management Medical Group.

These records included, but were not limited to the following:

Supplemental Medical Legal Report
RE:  Rona Young
December 11, 2011
Page 2 of 5

## MEDICAL RECORDS

5/4/10, Thomas Peatman, M.D., Orthopedic Surgery, Procedure Report.  Procedure: Computer navigated right total knee arthroplasty.

5/12/10, Dr. Peatman.  The patient is having pain and symptomatology.  Radiographs are obtained and interpreted.  AP, lateral and merchant view of the right knee revealed TKA in good position.  Doppler negative for Deep Venous Thrombosis.  Plan: Start OxyContin.  Continue Percocet for breakthrough pain.  Add Celebrex.  Start home physical therapy and CPM machine.

5/20/10, Dr. Peatman.  Physical exam is unchanged.  The patient will decrease OxyContin to once per day.  Continue Percocet for breakthrough.  Outpatient physical therapy.  Transition to a cane.  TED hose for swelling.  Remains temporarily totally disabled.  Follow-up in four weeks.

6/4/10, John Frazier, M.D., Orthopedic Surgery.  The patient is seen for a postoperative visit of her right total knee replacement.  She notices a suture knot or string along the distal aspect of the incision.  The suture knot was debrided out of the wound.  It was then further swabbed with Betadine and then covered up with band-aid to close by secondary intentional healing.  She was advised with wound care and will follow-up as needed.

6/16/10, Dr. Peatman.  The patient is taking Percocet for pain.  She complains of severe pain in the right knee.  Plan: 1. Course of outpatient physical therapy.  2. temporarily totally disabled.

7/15/10, Kenneth Kim, M.D., Pain Management & Physical Medicine & Rehabilitation, Integrated Pain Management Medical Group.  The patient had a knee replacement with Dr. Peatman in May of 2010.  She is currently doing physical therapy.  Physical exam is unchanged. Plan: 1. Continue with Voltaren gel and Lidoderm patch.  2. Follow-up in four weeks.  3. Follow-up with Dr. Peatman.  4. Will order MRI of the lumbar spine to rule out any new herniated disc.

7/19/10, Dr. Peatman.  The patient is taking OxyContin for pain, four per day.  The patient is having severe pain.  Plan: 1. Request six additional visits of PT for her knee and back, which has increased as a result of altered gait.  2. Off of work and on TTD.  3. Follow-up in two months.

8/25/10, Dr. Peatman.  The patient has had 18 visits of physical therapy.  Six additional visits were requested and denied.  She received Voltaren gel on 7/15/10 and has not used it much.  Dr. Rosenberg's office has ordered an MRI of the back.  The patient complains of improving pain in the right knee.  It has been slow.  She is taking Norco for pain of three to four per day.  She is using a cane.  The patient is status post a TKA on 5/4/10.  She is having severe pain.  She should have the TENS unit with a neuromuscular stimulator for long-term.  She is taking Norco for pain.  Wean as tolerated.  She will not likely be able to return to her prior job.  She is not P&S because she has not finished 24 visits of physical therapy.  She needs six more visits and the inferential unit.  She needs largely a sedentary job with options to get up as needed for comfort.  She needs an ergonomic evaluation.  Start four hours a day for the first two to three weeks.  No prolonged walking, no stooping and no heavy lifting.  Future medical care: she should start retraining.  X-rays are reviewed.  AP, lateral and merchant views of the right knee reveal the TKA in good position.

Supplemental Medical Legal Report
RE:  Rona Young
December 11, 2011
Page 3 of 5

9/1/10, the patient underwent a MRI of the lumbar spine without contrast. Impression(s): 1.
Bony and disc degeneration changes without focal disc protrusion. 2. Mild foraminal narrowing
bilaterally at L3-4, L4-5, and L5-S1 without compression of the nerve roots.

9/3/10, Dr. Peatman. The patient complains of improving pain in the right knee; it has been
slow. She is taking Norco, 3-4 per day. She is using a cane. Foot warmth, color and capillary
refill are normal. Request TENS with neuromuscular stimulator, Norco for pain-wean as
tolerated. She will not be able to return to her prior job. She will try Nucynta for a month. If
she is not much better, she will be made P&S. She is off work pending this trial of medication.

9/30/10, Dr. Peatman. Physical exam is unchanged. She should have the TENS unit with the
neuromuscular stimulator for long term, Norco for pain, wean as tolerated; Voltaren. She will
not likely be able to return to her prior job. She is not P&S because she has not finished 24 visits
of PT. She needs six more visits and the inferential unit. She needs a largely sedentary job with
options to get up as needed for comfort. She needs an ergonomic evaluation. Off work, pending
trial of medication. The patient is status post TKA 5/4/10.

10/28/10, Dr. Peatman. The patient has had 18 visits of physical therapy. Six additional visits
were requested and denied. The patient is taking Norco for pain, two per day, wean as tolerated,
Voltaren. She is P&S. She cannot go back to work. No prolonged walking, no stooping, no
heavy lifting. Future medical care: she should start retraining.

12/1/10, Dr. Peatman. The patient was determined to be permanent and stationary as of
10/28/10. At the time of her injury, she was employed as a public information officer by
Merrick College. She was injured when a chair collapsed since it was broken. She twisted her
knee and injured her arm and back. She went to Dr. Rosenberg's office. She has seen him for
her workers' compensation back injury and elbow injury. She has had extensive conservative
management without relief including medications, modified activity, bracing, injections, a cane
and physical therapy. Prior to the injury, she had a knee ACL reconstruction in 1994 by Dr.
Jensen that was Worker's Compensation as well. She has had some pain in the knee in the
intervening years. The patient was subsequently treated with a right knee TKA on 5/4/10. She
has had 18 visits of PT. An addition six visits was requested and denied. Dr. Rosenberg's office
ordered an MRI of her back. She currently complains of mild to moderate improving pain in the
right knee. It is worse with prolonged standing. She is taking Norco for pain of two per day.
She is no longer using a cane per Dr. Schwartz. She is P&S. She cannot go back to work. No
prolonged walking, no stooping and no heavy lifting. Diagnosis(es): 1. Osteoarthrosis in the
local primary leg. 2. Knee joint replacement. Using the AMA Guides, she has a 20% WPI for
the knee. Work preclusions: Considering the residual symptoms detailed above, work
preclusions are indicated. No prolonged walking, no stooping and no heavy lifting. She is
unable to return to her usual and customary job. She is a Qualified Injured Worker eligible for
vocational rehabilitation benefits. The patient may from time to time have symptom flare-ups,
which may require symptomatic care with brief courses of therapy, non-surgical physician visits
and medications. She will likely need a knee revision in her lifetime. Apportionment is
indicated. It is complicated. She had a prior Worker's Compensation injury that likely started
the degenerative process. The current injury aggravated the condition. Dr. Peatman apportions
the current TKA at 50% to the new injury and 50% to the prior injury.

Dec. 30. 2011 11:40AM    Pain and Rehab Ricoh Front Desk          No. 3763   P. 5/6

Supplemental Medical Legal Report
RE:  Rona Young
December 11, 2011
Page 4 of 5

## DISCUSSION

Review of the updated file reflects that the patient underwent computer navigated right total knee arthroplasty on 05/04/10.

Clearly, the patient would be deemed temporarily totally disabled postoperatively.

It is noted that as of 08/25/10, Dr. Peatman imposed Functional Work Restrictions.

Dr. Peatman noted the patient was Permanent and Stationary as of 10/28/10.  Work restrictions included no prolonged walking, no stooping, no heavy lifting.

Based on the submitted medical file, it is my opinion the patient will be considered temporarily totally disabled for the right knee through 10/28/10 per Dr. Peatman.

It would appear that as of 10/28/10, the patient would be deemed temporarily partially disabled based on the Functional Work Restrictions imposed by Dr. Peatman.

It remains my opinion that the patient is not at permanent and stationary status for the right knee in regards to the workers' compensation claim of 08/25/09.

Supplemental Medical Legal Report
RE:  Rona Young
December 11, 2011
Page 5 of 5

"I personally prepared this report.  I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have received from others.  As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and except as noted in this report, then I believe it to be true.  I have not violated Labor Code Section 139.3, and the contents of this report and bill are true and correct to the best of my knowledge.  The foregoing declaration was signed in Alameda County on the above-noted date.

_____

Babak J. Jamasbi M.D., F.A.C.P.M.


Signed this 29th day of December 2011 in Alameda County.
(jk,jll)

Cc:
Arthur London, Sr. Claims Examiner
York Insurance
P.O. Box 619079
Roseville, CA 95661-9079


Rona Young
131 Royal Crest Drive
Columbia, South Carolina 29229

Department of Industrial Relations            STATE OF CALIFORNIA
DIVISION OF WORKERS' COMPENSATION      EDMUND G. BROWN, JR., Governor
DISABILITY EVALUATION UNIT
1515 Clay Street, 6th Floor
Oakland, Ca 94612
510/622-2866

## SUMMARY RATING DETERMINATION
----------------------------

DEU FILE NO: H84208                    DATE: July 6, 2011
EAMS CASE NO:  DEU7614993

Employee:                              Carrier:
Rona Young                             PCCD000327
131 Royal Crest Drive                  YORK UPLAND
Columbia, Sc 29229                     PO BOX 619079
                                       ROSEVILLE, CA 95661


Employee Representative:
                          Formal Medical Evaluation of:
                          SEE PAGE 2 dated


THIS PERMANENT DISABILITY RATING DETERMINATION IS BASED ON THE FOLLOWING
FACTORS:

Date of Injury (DOI): 08-25-09         Age on DOI: 52
Occupation: PUBLIC INFO OFFICER


R KNEE, POST TOTAL KNEE REPLACEMENT WITH FAIR RESULTS (68 POINTS--NO
BREAKDOWN PROVIDED IN REPORT) = 50LE = 20WP


NOTE:
DR. PEATMAN APPORTIONS 50% OF DISABILITY TO A PRIOR INJURY.
A WORKERS' COMPENSATION JUDGE HAS DETERMINED THAT APPORTIONMENT
IS VALID.

```
Department of Industrial Relations              STATE OF CALIFORNIA
DIVISION OF WORKERS' COMPENSATION       EDMUND G. BROWN, JR., Governor
DISABILITY EVALUATION UNIT
1515 Clay Street, 6th Floor
Oakland, Ca 94612
510/622-2866
```

SUMMARY RATING DETERMINATION
-----------------------------

Page 2
DEU #: H84208

EAMS Case #:  DEU7614993

* THOMAS PEATMAN, M.D. * PTP * 12/1/10 *

RIGHT-KNEE - DIAGNOSIS-BASED ESTIMATE - TOTAL REPLACEMENT
50% [17.05.10.08 - 20 - [2]23 - 111D - 19 - 23] 12 PD AFTER APPORTIONMENT

FUTURE MEDICAL TREATMENT REQUIRED

The permanent disability rating is 12%, which is equivalent to 38.25
weeks of disability payments. Based on average weekly earnings of
$1,310.80, the initial weekly rate is $230.00. Payments commence within
14 days after the date of the last payment of temporary disability
indemnity.

By: _____
    Tani Kizer, Disability Evaluator

DEU FORM 102    (NEW 1-91)                              K39270



June 30, 2011

Rona Young
131 Royal Crest Drive,
Columbia, SC  29229

RE:   **Employee:**      Rona Young
      **Employer:**      Peralta Community College District
      **Date of Injury:** 8/25/2009
      **Claim Number:** PCCD-000327

### NOTICE REGARDING PERMANENT DISABILITY BENEFITS

### PAYMENT RESUME

York Insurance Services Group, Inc. - California is handling your workers' compensation claim on behalf of Peralta Community College. This notice is to advise you of the status of disability benefits for your workers' compensation injury on the date shown above.

Payment is resuming for permanent disability and is sent separately in the amount of $755.71 for the period(s) starting 06/08/2011 through 06/30/2011. Your weekly compensation rate is $230.00 based on your earnings of $1,310.80 per week. Payments will be sent to you every two weeks on Thursday and will continue until you have been paid a total of $8,797.50 which is based on our rating of Dr. Peatman's Permanent and Stationary report. These payments will be deducted from any award you may receive.

*The State of California requires that you be given the following information:*

You have a right to disagree with decisions affecting your claim. If you have any questions regarding the information provided to you in this notice, please call: Arthur London, (909) 942-5443. However, if you are represented by an attorney, you should call your attorney, not the claims adjuster. If you want further information on your rights to benefits or disagree with our decision, you may contact your local state Information & Assistance Office of the Division of Workers' Compensation by calling (510)622-6990.

For recorded information and a list of offices, call (800)736-7401. You may also visit the DWC website at: http://www.dir.ca.gov/DWC/dwc_home_page.htm

You also have a right to consult with an attorney of your choice. Should you decide to be represented by an attorney, you may or may not receive a larger award, but, unless you are determined to be ineligible for an award, the attorney's fee will be deducted from any award you might receive for disability benefits. The decision to be represented by an attorney is yours to make, but it is voluntary and may not be necessary for you to receive your benefits.

RE:     **Rona Young**
        **PCCD-000327**
        **Page 2**

To resolve a dispute, you may apply to the Workers' Compensation Appeals Board.

Sincerely,

Arthur London
Senior Claims Examiner

AL:mm/B037

cc: P Community College
    333 E. Eighth Street,
    Oakland, CA  94606-2844

    ASCIP

Enc.:
- DWC fact sheet D – Permanent Disability

# DIVISION OF
# WORKERS' COMPENSATION

*Minimizing the impact of work-related injuries and illnesses. Helping resolve disputes over workers' compensation benefits. Monitoring the administration of claims.*

**FACT SHEET D**
**ANSWERS TO YOUR QUESTIONS ABOUT PERMANENT DISABILITY BENEFIT**

Permanent disability (PD) is any lasting disability from your work injury or illness that affects your ability to earn a living. If your injury or illness results in PD you are entitled to PD benefits, even if you are able to go back to work.

**Do I need to fill out the claim form (DWC 1) my employer gave me?**
Yes, if you want to make sure you qualify for all benefits. If you do not file the claim form within a year you may not be able to get benefits. Your employer must give you a <u>DWC 1 claim form</u> within one day of knowing you were injured. Filling out the claim form opens your workers' comp case. State law also lays out benefits beyond the basics you may qualify for once you file the claim form with your employer. Those benefits include, but are not limited to:

- A presumption that your injury or illness was caused by work if your claim is not accepted or denied within 90 days of giving a claim form to your employer
- Up to $10,000 in treatment under medical treatment guidelines while the claims administrator considers your claim
- An increase in your disability payments if they're late
- A way to resolve any disagreements that might come up between you and the claims administrator over whether your injury or illness happened on the job, the medical treatment you receive and whether you will receive PD benefits.

**What if my employer didn't give me the DWC 1 claim form?**
Ask your employer for the form or call the claims administrator to get it. The claims administrator is the person or entity handling your employer's claims. The name, address and phone number of this person should be posted at your workplace in the same area where other workplace information, like the minimum wage, is posted. You can also get the form from the Division of Workers' Compensation (DWC) Web site at <u>www.dwc.ca.gov</u>. In the left navigation pane, under "I want to," click on "find a form".

**Who decides if I should get PD benefits? How is that done?**
A doctor decides if your injury or illness caused PD. The doctor's report is then turned into a PD rating. The process used to turn the doctor's report into a rating can vary depending on your date of injury and other factors. The PD rating determines the benefits you'll receive.

After your doctor decides your injury or illness has stabilized and no change is likely, PD is evaluated. At that time, your condition has become permanent and stationary (P&S). Your doctor might use the term maximal medical improvement (MMI) instead of P&S.

Once you are P&S or have reached MMI, your doctor will send a report to the claims administrator telling them whether you have any PD. The doctor also decides if any of your disability was caused by something other than your work injury, such as a previous injury or another condition. This is called apportionment.

The claims administrator may ask you to fill out a form describing your disability.

**What if I don't agree with the doctor?**
If you or the claims administrator disagrees with your doctor's findings you can be seen by a doctor called a qualified medical evaluator (QME). You request a QME list (called a panel) from the DWC Medical Unit. The claims administrator will send you the forms to request a QME. Your employer will pay for the cost of the QME exam. You have 10 days from the date the claims administrator tells you to begin the QME process to

submit your request form to the DWC Medical Unit. If you do not submit the form within 10 days, the claims administrator will do it for you and will get to choose the kind of doctor you'll see.

There are other specific and strict timelines you must meet in filing your QME forms or you will lose important rights. Read the DWC Information and Assistance (I&A) Unit guide 2 and refer to fact sheet E for more information.

### What is a PD rating and how is it calculated?
First, after your exam, the doctor will write a medical report about your impairment. Impairment means how your injury affects your ability to do normal life activities. The report includes whether any portion of your disability was caused by something other than your work injury. The doctor's report ends with an impairment number. Next, the impairment number is put into a formula to calculate your percentage of disability. Disability means how the impairment affects your ability to work. Your occupation and age at the time of your injury and your future earning capacity are also included in the calculation. Then, any portion of your disability caused by something other than your work injury is taken out of the calculation.

Your disability will then be stated as a percentage. Your percentage of disability equals a specific dollar amount, depending on the date of your injury and your average weekly wages at the time of injury. A rating specialist from the DWC Disability Evaluation Unit may help calculate your rating.

If you were injured on or after Jan. 1, 2005 your PD award may be increased or decreased by 15 percent, depending on whether you work for an employer with 50 or more employees and your employer offers -- and you accept or decline -- regular, alternative or modified work.

### How is PD paid?
Once your doctor says you have PD, the claims administrator will estimate how much you should receive and begin making payments to you, even if the final percentage of disability has not been calculated. PD benefits are paid in addition to temporary disability (TD) benefits you received. The claims administrator must begin paying your PD within 14 days after TD ends and continue the payments until a reasonable estimate of your disability amount has been paid. If you have not missed any work, PD payments are due from the date the doctor says you are P&S. PD benefits continue to be paid every two weeks on a day picked by the claims administrator until a reasonable estimate of your disability amount has been paid. When the actual amount of PD due has been determined, the amount over the estimate must be paid.

### How is my claim finally resolved?
After the amount of PD in a claim is determined, there is usually a settlement or award for benefits. This award must be approved by a workers' compensation judge. If you have an attorney, your attorney should help you obtain this award. If you don't have an attorney, the claims administrator should help you obtain the award. You can also get help from the I&A officer at the local Workers' Compensation Appeals Board office. If your doctor said further medical treatment for your injury or illness might be necessary, the award may provide future medical care.

There are two types of settlements. A settlement is agreed on by you and the claims administrator.

You can resolve your whole claim through one lump sum settlement called a compromise and release (C&R). A C&R may be best when you want to control your own medical care and/or you want a lump sum payment for your PD. A C&R usually means that after you get the lump sum payment approved by the workers' compensation judge, the claims administrator will not be liable for any further payments or medical care.

You can also agree to a settlement called a stipulation with request for award (stip). A stip usually includes a sum of money and future medical treatment. Payments take place over time. A judge will review the agreement.

If you cannot agree to a settlement with the claims administrator, you can go before a workers compensation judge, who will decide your PD award.  A judge's finding is called a findings and award (F&A). The F&A generally consists of an amount of money and a provision for the claims administrator to pay for approved future medical treatment.

For more information, call 1-800-736-7401 or visit the DWC Web site at www.dwc.ca.gov to find a local I&A office. You may also download I&A guides and get information on workshops for injured workers.

The information contained in this fact sheet is general in nature and is not intended as a substitute for legal advice. Changes in the law or the specific facts of your case may result in legal interpretations different than those presented here.

November 2010

STATE OF CALIFORNIA
Department of Industrial Relations
Division of Workers' Compensation
DISABILITY EVALUATION UNIT

## NOTICE OF OPTIONS FOLLOWING DISABILITY RATING

This is a disability rating determination (Rating) prepared by the State of California Disability Evaluation Unit within the Division of Workers' Compensation. It describes your percentage of disability. This percentage is based on your limitations as reported by the doctor, your potential loss of future earning capacity, your age, and the type of work you were doing at the time of your injury. If the rating indicates that you have some permanent disability, you should automatically begin to receive permanent disability payments. Payments are made in installments, every two weeks, for the number of weeks shown on the rating, less any permanent disability payments made to you prior to the rating.

If the rating is not disputed by you or your employer, you do not have to take any action to receive your benefits. We do want you to know that you may have two options you may want to consider. They are:

1)   STIPULATED FINDINGS AND AWARD;
2)   COMPROMISE AND RELEASE;

## 1)   STIPULATED FINDINGS AND AWARD

If you and the employer, carrier or agent, accept the rating, written agreements may be submitted to the Workers' Compensation Appeals Board (WCAB) requesting that an Award be made without the need for a hearing. We recommend this option when the rating is not disputed, and you have a need for future medical care. A Workers' Compensation Judge will review the stipulations and issue an award.

### ADVANTAGES

- A stipulated award is a quick, easy way to settle your case while protecting your rights;
- There is no need to take time off work to go to a hearing;
- The Division of Workers' Compensation will review the settlement to protect your rights at no cost to you; there is no need to hire a lawyer;
- If your condition worsens, you can apply for additional payments anytime within five years from the date of your injury;
- If you need additional medical care or you are to receive a life pension (rating of 70% or more), your rights to future benefits can be fully protected and a judge can enforce the award if there later becomes a problem.
- You may request a lump sum payment of all or part of your permanent disability if you can show a financial need or hardship. However, a Workers' Compensation Judge must first be convinced that it would be in your best interest.

### DISADVANTAGES

- You normally will not receive a lump sum payment, but will receive your benefits in payments every two weeks.

## 2)   COMPROMISE AND RELEASE

A Compromise and Release Agreement is a settlement which usually permanently closes all aspects of a workers' compensation claim except for vocational rehabilitation benefits, including any provision for future medical care.

The Compromise and Release is paid in one lump sum to you. It must be reviewed and approved by a Workers' Compensation Judge.

### ADVANTAGES

- You may receive more money than you would receive under a Stipulated Findings and Award because you are giving up your future rights in exchange for money.
- If the employer or insurance company disputes the rating, a Compromise and Release will assure you receive an agreed amount of money now rather than risk getting nothing or a lesser amount later.
- You will receive your benefits in one lump sum.

### DISADVANTAGES

After your case has been resolved by a Compromise and Release Agreement, you cannot ask for more medical treatment at your employer's expense, nor can you claim additional benefits if your disability or condition becomes worse. Also, if you later die as a result of the injury, your dependents would not be entitled to death benefits.

- Once a Workers' Compensation Judge has approved your Compromise and Release, the settlement is final and it cannot be set aside except in very rare circumstances.

**If you would like more information, you can receive recorded information free of charge, by calling 1-800-736-7401 or you may contact your local Information and Assistance officer (listed in the state government section of your telephone book under Department of Industrial Relations, Division of Workers' Compensation). You may also consult an attorney of your choice.**

### SPECIAL NOTICE TO UNREPRESENTED INJURED WORKERS

If you disagree with the rating because you believe that the rating was improperly calculated or that the doctor failed to address any or all issues or failed to properly rate your impairment, you may request administrative review of the rating within 30 days of receipt of the rating, from the Administrative Director of the Division of Workers' Compensation. In some cases, you may be entitled to an additional medical evaluation or a different medical specialist. Your request should include a copy of the rating and a copy of the report from the doctor. A copy of the request must be sent to your claims adjustor.

If you have questions about whether to request administrative review of your rating or whether another medical evaluation is appropriate, you should contact the local Information and Assistance Officer listed in the state government section of your telephone book under Department of Industrial Relations, Division of Workers' Compensation. They can tell you how to file the request if you decide to do so.

# EXHIBIT I

*R.A.*



# Merritt College

12500 Campus Drive · Oakland, California 94619 · (510) 531-4911 · FAX (510) 436-2514

Robert A. Adams, Ed.D.
President



RECEIVED
JUL 2 0 2007
Risk Management Office
Peralta Community College District

July 19, 2007

CERTIFIED MAIL #7006 0810 0005 1428 0242

Ms. Rona Young
3300 Northwood Drive, Unit D
Concord, CA 94520

Dear Ms. Young:

Thank you for talking with me and Dr. George Herring on July 18, 2007.   In an effort to accommodate your work restrictions, this will confirm the discussion that took place wherein the President's Office is offering you with a modified job assignment effective July 23, 2007.  As discussed, the College has received written medical verification that you are able to work this modified job assignment.

MODIFIED JOB DUTIES – NOT TO EXCEED THROUGH AUGUST 31, 2007: Specifically, you will NOT be required to work more than 4 hours per day, 2 hours to be performed at the Merritt campus, and 2 hours to be performed at home as per your doctor's  letter of July 16, 2007.

These are the immediate college priorities and your modified duty position will consist of the following duties:

1.  Write, design, layout, edit, proofread, and coordinate the publication and distribution of college publications, including college catalogs, college class schedules, handbooks, brochures, flyers, and advertising copies.
2.  Coordinate and arrange interviews with faculty, staff, and others as assigned.
3.  Provide information to college and district staff about public events, classes and other campus-related news.
4.  Maintain and produce the college's calendar of events.
5.  Use a personal computer utilizing desktop publishing, graphics programs and related software.
6.  Maintain media and college archival files.
7.  Perform related duties as assigned.

**Peralta Community College District**
333 East Eighth Street · Oakland, California 94606 · (510) 466-7200

Ms. Rona Young
Page 2
July 19, 2007

Please note that this is a temporary assignment ONLY and is not, nor is it intended to be, a permanent modification of your job duties. Modified duty is provided with the INTENT of promoting your FULL RECOVERY to pre-injury status and is conditioned upon monthly review of your medical status and timely communication to me and Human Resources of your current medical condition. In the event your medical restrictions do not improve or become more severe, or in the event that it is determined that you are not able to perform the above duties in a reasonable manner based on operational needs, this offer of modified duty will be re-evaluated.

Your working hours will be 9:00 a.m. – 11:00 a.m. at Merritt and two additional hours at home. We will meet again on September 4, 2007, to reevaluate this temporary assignment based on your work restrictions at that time.

Should you have any questions regarding the offered modified duties, please contact me at (510) 436-2501.

Sincerely,

*Robert A. Adams*

Robert A. Adams, Ed.D.
President

RAA:jpb

Copy:  Nancy Pak, Human Resources Specialist
        Joanne Baldinelli, Risk Manager

REVISED
Physicians for Rona Young
02/16/12

**Ulnar Nerve Transposition Surgeon, '08:**

Dr. Theodore T. Schwartz

Webster Orthopaedic Medical Group

5801 Norris Canyon Rd, Ste. 230
San Ramon, CA   94583
(925) 355-7350

(925) 244-1457 facsimile

**Knee Surgery, '95:**

**Bi-Lateral Carpal Tunnel Release, Feb 99 and Aug 99:**

Dr. J. Kenneth Jensen (retired)

Webster Orthopaedic Medical Group

Orinda Office (closed) see San Ramon Office

**Back Injury '03:**

Dr. Kenneth Hsu

**San Francisco** Orthopaedic Surgeons, Inc.

One Shrader Street, Suite 450

**San Francisco**, CA 94117

(415) 750-5570

(415) 750-8121 facsimile

REVISED
Physicians for Rona Young
02/16/12
**Current Pain Management Physician, '11-'12:** ✓

Dr. Ezra Riber

Palmetto Pain Management

1655 Bernardin Avenue, Suite 240

Columbia, SC 29204

(803) 779-3263, 779-3239

(803) 779-3207 facsimile


**QME Physician, QME, '08-'11 :**

Bakak J. Jamasbi, M.D.,

Pain & Rehabilitative Consultants Medical Group

6699 Telegraph Avenue, Suite 202

Oakland, CA 94609

510 647-5101

510 647-5105 facsimile


**Total Knee Replacement Surgeon, '10:**

Thomas Peatman, M.D.

Webster Orthopaedic Medical Group

80 Grand Avenue, Suite 400

Oakland, CA 94612-3725

510 238-1200

510 663 1548 facsimile

REVISED
Physicians for Rona Young
02/16/12

**Ankle Surgeries (2003May – Sept '04) resulting from Back injury in 2003:**

Dr. William McGann

**San Francisco Orthopaedic Surgeons, Inc.**

One Shrader Street, Suite 650

San Francisco, CA 94117

(415) 221-0665

(415) 221-4023 facsimile

**Pain Management and Pre-Designated Physician:**

**Note: referred to Dr. Rosenberg by Dr. Hsu**

Dr. Jacob Rosenberg (pre-designated physician)

Dr. Kenneth Kim

Dr. Rome (psychologist)

Integrated Pain Management

454 North Wiget Lane

Walnut Creek, CA 94598

(925) 691-9806

(925)691-9807 facsimile

# EXHIBIT J



**Peralta Community College District**
**Office of Risk Management**
333 East Eighth Street, Oakland, CA 94606
Phone:  (510) 466-7247          Fax:  (510) 587-7844

August 27, 2008

Sent Via U.S. Mail and.
e-mail to rona_young@yahoo.com

Ms. Rona Young
110 Fairview Avenue
Baypoint, CA 94565

Subject:         Reasonable /

Dear Ms. Young:

Thank you for your patience c                          .veral weeks.  I know I have not been
available for phone calls and                          n getting back to you.  This letter will
serve to summarize both the                          , August 25, 2008 and our meeting on
July 24, 2008.

<u>August 25, 2008 Telephone Conversation</u>

During our telephone conversation on August 25, 2008 I informed you that Merritt College is not able to
accommodate your current work restrictions, which include:

- Limiting work hours to 6 hours per day
- Limit keyboarding to ½ hour each hour
- No lifting greater than 5 pounds

Additionally based on Dr. Schwartz' progress report dated July 23, 2008, the following
accommodations were also recommended:

- voice activated software
- a tablet computer
- an ergonomic evaluation of your work station at Merritt College

As I indicated on the telephone, President Adams has advised that he is not able to provide the
requested accommodation at this time as the College vitally needs to have a full time Public Information
Officer who is able to perform the essential functions of the job.  One of the key essential functions of
the position of Public Information Officer is the ability to work full time.  We are hopeful, as I am sure
you are, that you will be released to return to work 8 hours per day.  When and if that occurs, the
District will re-engage in the interactive process to evaluate any other accommodations that are
recommended by your physician(s).

Letter to Ms. Rona Young
August 26, 2008
Page 2

During our conversation on Monday, I advised that you will continue to receive your full pay as long as you continue to receive temporary disability benefits from the workers' compensation program, and have other leave accruals to supplement the workers' compensation benefits. We did not discuss this but it is important to inform you that currently 2/3 of your salary is being paid by workers' compensation temporary disability benefits and 1/3 is being paid from sick leave and extended illness leave (EIL) benefits. Your sick leave accruals will be exhausted on August 26, 2008, at which time you will starting using EIL leave accruals. Under the Education Code, the maximum EIL salary benefit is 50%. Please note that if workers' compensation temporary disability benefits cease, your salary from the District will be limited to the EIL benefits of 50% of your pay, and you will be required to pay 50% of your benefit costs.

You inquired about placement on the 39-month reemployment list and I explained that, pursuant to the Education Code, you cannot be placed on the 39-month reemployment list until all leave accruals have been exhausted. You advised that you are not sure what leave accruals are currently being used to supplement your salary; therefore, I have asked Nancy Pak in the Human Resources Department to provide you with information regarding how your leaves have been charged since December 2007.

<u>July 24, 2008 Meeting with Rona Young, Diana Lara, and Joanne Baldinelli</u>

During our meeting on July 24, 2008 you provided the physician's progress report from Dr. Schwartz which outlined the work restrictions and recommended accommodations noted earlier in this letter.

We also discussed the accuracy of the job duties provided to your physician. You and Diana took exception to the job duties, as it included some duties that are not a part of the job description, per the agreement between the Peralta Community College District and Local 790 referenced as PIO, (Class Grievance) (2005-12-12) dated 5/5/06. I have asked the Human Resources for clarification but we agreed that based on the physical demands detailed in the job description and the information you verbally provided to Dr. Schwartz, that the work restrictions and accommodations in his July 23, 2008 progress report are still valid and most likely would not change even if we provided an updated job description.

You explained that you work extensively on a computer using Word, Excel, PowerPoint, In Design, Adobe and Photo Shop. You use the graphic programs for layout and design, and Word for text. Currently you use your own MAC computer for these applications; however, you also need to use a personal computer to manage the College President's calendar and those programs that require PC applications.

Previous accommodations include a chair and a sit/stand work station, which were procured by the College, and a self procured luggage cart to assist in moving supplies and materials when you deliver college related materials to the business community.

As previously mentioned, the Peralta Community College District is an equal opportunity employer that does not discriminate on the basis of disability and provides reasonable accommodations for employees with disabilities to enable them to perform their essential job functions. If you are returned to work full time with restrictions, please contact President Adams immediately so that the District and College can evaluate the restrictions and determine whether reasonable accommodations would allow you to perform the essential functions of the job.

Letter to Ms. Rona Young
August 26, 2008
Page 3


Rona, I have attempted to accurately summarize our telephone conversation and meeting.  If anything I have stated is not accurate or if I have left off key information, please do not hesitate to let me know.

Sincerely,

Joanne M. Baldinelli
Director of Risk Management


cc:     Robert Adams, President, Merritt College
        Diana Lara, Local 1021

# EXHIBIT K

# EXHIBIT L



JAN 0 5 2010

# PERALTA COMMUNITY COLLEGE DISTRICT
## EVALUATION OF PERFORMANCE AND DEVELOPMENT
## CLASSIFIED EMPLOYEES – SEIU, LOCAL 1021

|   |   |
|---|---|
|   | Probationary 2 mos. |
|   | Probationary 6 mos. |
| x | Annual |

| | |
|---|---|
| Name: **Rona Young** | Position title: **Public Information Officer** |
| Department/Division/Office: **President's Office** | Employment date: |
| Time in present position: | Evaluation period 12/2008 to 12/2009 |
| Major duties and responsibilities: | |
| Evaluation made by: **Robert Adams** | Date of evaluation: *12/16/09* |

## Performance Rating

**Rating Scale:**
**Exceeds job requirements:** superior performance that is well above what is expected.
**Meets job requirements:** performance adequately satisfies the requirements of the job.
**Improvement needed:** poor performance or requiring significant improvement.

To the right of each rating factor, check the box that best represents the employee's performance during this evaluation period. Include at least one comment in each box to the right of the rating, especially for any rating of "Improvement needed."

| PERFORMANCE FACTORS | Exceeds job requirements | Meets job requirements | Improvement needed | Supporting Observations |
|---|---|---|---|---|
| **Job Skills** | | | | Rona has served the college as Public Information Officer (PIO) since 1995 and has an excellent understanding about the role and responsibilities. Under my administration, she has taken on the additional responsibilities of a chief of staff. She works evening and weekends to accomplish additional work that is time sensitive and part of extended community relations & college events.  She is civically engaged in District and college Shared Governance structures, serving on college and District committees: PBI Education Comm., College Council, Staff Dev., CEMPC, Title III Planning Team, Student Success, Family Heads, CIA & a Classified Senator. Also supports student engagement with Student Services for Enrollment Development. Supports the administrative team. |
| Knowledge: Understands all phases of work and related matters | x | | | |
| Organizes and plans work effectively | | | | |
| Plans for long range results | | | | |
| Analytical abilities | x | | | |
| Written Skills (*where appropriate*) | x | | | |
| Decision Making | | | | |
| Ability to communicate | x | | | |
| **Quality of Work** | | | | She is informed about the subject matter and seeks input from administrators when she needs clarification. The duties require an office assistant and Rona has to rely on student workers for support. |
| Accuracy | x | | | |
| Thoroughness | x | | | |
| Neatness | x | | | |
| **Quantity of Work** | | | | Prioritization is the key to her effectiveness since she a dual reporting responsibility to Student Services' Enrollment |
| Sets/follows priorities | | x | | |

| | Exceeds job requirements | Meets job requirements | Improvement needed | |
|---|---|---|---|---|
| Amount of Work Completed | x | | | Development Team and the College President. We need to develop the scope of her work in these two areas: Office of the President and Student Services. |
| Work Completed on Schedule | x | | | |
| **PERFORMANCE FACTORS** | | | | **Supporting Observations** |
| **Approach Toward Work** | | | | Rona works well with others and strives to provide leadership to Classified professionals by example.  She believes in the mission and vision of the college and supports the administrative team. |
| Cooperative | x | | | |
| Applies Adequate Judgment | x | | | |
| Shows initiative | x | | | Rona strives to identify the best approach and intervention to crisis prevention/management and new projects. |
| **Work Habits** | | | | A strength that she exhibits is that while an illness or injury may prevent Rona from working in the office, she is willing to telecommute to make sure her work is completed.  She supports the president to complete work that may be assigned on an as needed basis, emergency or from another service area.  Takes pride in completing work that is self-initiated or part of a joint project. Often works on two computers during the work day: PC and Macintosh. |
| Attendance | | | | |
| Follows Rules and Regulations | x | | | |
| Follows Proper Safety Practices | x | | | |
| Proper Care of Equipment and Materials | | | | |
| **Working Relationships** | | | | Rona maintains a good relationship with colleagues always working through difficult situations to achieve a positive outcome.  She is the public face of Merritt and would like to reestablish community contacts while building others. |
| With co-workers | x | | | |
| With the public | x | | | |
| With other employees | x | | | |
| **Leadership** *(if applicable)* | | | | She is civically engaged in District and college Shared Governance structures, serving on college and District committees: PBI Education Comm., College Council, Staff Dev., CEMPC, Title III Planning  Team, Student Success, Family Heads, CIA & a Classified Senator.  Also supports student engagement with Student Services for Enrollment Development. |
| Directs the work of others | | | x | |
| Trains and develops staff | | | | |
| Effective teamwork | x | | | |
| Capacity to lead others | x | | | |

Additional achievements/qualifications – describe any factors relevant to performance that have not been covered in the above, such as training, experience, or attainment of special skills: She is very informative when speaking about the college. She supervises Work Study Students who have acknowledged that her training and skills development have been exemplary. Rona plans to use staff development time to enhance her skills in PowerPoint, Excel and Windows 2007 and to continue ongoing classes for media relations and business writing.

## Overall Performance Review

**Employee's major performance strengths:** Rona multitasks efficiently; receives the critique of her work objectively; engages well with students; and, always keeps the end-user in mind: community members, students, faculty, staff or administrator.

**Employee's job-related goals:** Participate in the leadership institute offered by the District.  Attend Staff Development workshops and classes to enhance skills: writing, graphic design, community and governmental relations, and social media.

**Progress made since last evaluation:** *Comment on progress of goals or remediation strategies from last evaluation.*

| **Overall Job Performance Rating:** *Please check one below.  These ratings must be substantiated by supporting observations and example, above.* | |
|---|---|
| x | Superior performance: consistently well above what is expected |
| | Satisfactory: meets the requirements of the job |
| | Unsatisfactory: improvement needed, not up to the requirements of the job |

**Development Plan:** *List areas of needed improvement in the boxes labeled accordingly.  In the boxes labeled Developmental Goals, list the work skills or capabilities that the employee desires for enrichment or advancement.  This would be the place to note attempts to work toward a promotion or job change.*

| Development Area | Training, assistance | Meeting to review |
|---|---|---|
| **Area of needed improvement:** | | |
| **Area of needed improvement:** | | |
| **Area of needed improvement:** | | |
| **Developmental goals:** | It is my goal to complete the remaining units of my Marketing degree to enter a Master's program in English and/or Spanish to join the Diversity Teaching Program or for career advancement. | |
| **Developmental goals:** | | |

## Employee Section

You should review your supervisor's written comments on this form and discuss, as needed, any verbal comments made during the evaluation meeting.  The space below is provided for you to write down any comments, if any, you wish to make about your performance related to this evaluation.

| Employee Comments: I enjoy my career in community college education.  It is my goal to complete the remaining units of my baccalaureate degree to enter a Master's program in English and/or Spanish to be able to teach.  My experience at Merritt College has been enhanced by the work I do with President Adams.  He allows me to be self-directed and trusts my judgment after working in this environment with faculty, staff and administrators who have a shared vision to serve our students and community at-large. |
|---|

(For Probationary Employees) Do you recommend continuation in present assignment?   [ ✓ ] Yes   [ ] No

_____          12/16/09
Employee's signature                                              Date

_____          _____
Supervisor's signature                                             Date

_____          12/16/09
College President                                                   Date

*Note:  The signature of the employee acknowledges that the evaluation was discussed and reviewed with them; it does not imply employee concurrence with the evaluation.*

# EXHIBIT M

## Nancy Pak

**From:** Nancy Pak
**Sent:** Tuesday, August 31, 2010 2:55 PM
**To:** Trudy Largent; David Betts
**Cc:** Harizon Odembo
**Subject:** FW: PIO - Recommendations
**Importance:** High

FYI.

*Nancy A. Pak*
*HR Generalist, Human Resources*
*PERALTA COMMUNITY COLLEGE DISTRICT*
*333 E. 8th Street*
*Oakland, CA 94606*
*(510) 466-7386*
*Fax: (510) 466-7280*

**From:** Gregory Valentine
**Sent:** Tuesday, August 31, 2010 12:41 PM
**To:** Jannett Jackson
**Cc:** Carrie Burdick; Nancy Pak
**Subject:** PIO - Recommendations
**Importance:** High

Dr. Jackson,

First, I'd like to thank for your time and attention today.  I have the following suggestions for an action plan concerning the return of your PIO, Rona Young.

Please contact Ms. Young and inform her that our decision to accommodate her ability to work four (4) hours per day as outlined by her doctor is predicated on her ability to use a motorized wheelchair during her four hours.

> If she is agreeable to using a motorized wheelchair, we will need clearance from her doctor to use the chair which means she will need to be mobile during her four (4) hours/day.

> If she or her doctor does not agree to the use of the chair, then we will let her remain on Temporary Total Disability as we can not accommodate her for four (4) hours/day with a 100% stationary position.

Once we have all approvals, Ms Young's and her doctor's, we will begin the process to secure the wheelchair, bring her chair over from Merritt, and schedule her Return-to-Work date.

Thanks.

Greg Valentine
Director of Risk Management
Peralta Community College District
510-466-7247 office
925-915-5599 cell



8/31/2010