UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONA YOUNG,<br>        Plaintiff,<br><br>    v.<br><br>PERALTA COMMUNITY COLLEGE DISTRICT, et al.,<br>        Defendants. | Case No. 14-cv-05351-JD<br><br>**ORDER RE MOTION TO DISMISS**<br>Re: Dkt. No. 18 |

Pro se plaintiff Rona Young is suing her former employer, Peralta Community College District, for refusing to provide her with reasonable accommodations after she sustained a work-related injury. She brings claims under the Americans with Disability Act ("ADA"), the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964. As defendants note, neither the ADEA nor Title VII protects against employment discrimination on the basis of disability -- these statutes protect against discrimination based on age, race, religion and other protected classes. But plaintiff alleges only disability discrimination, and has failed to exhaust her administrative remedies for any other claims. The ADEA and Title VII claims are therefore dismissed.

Plaintiff's ADA claim is timely and will move forward but only against Peralta Community College District. The parties agree that the individual defendants -- Robert Adams, Gregory Valentine and Arthur London (who has not yet been served) -- were improperly named. Dkt. No. 18 at 5-6; Dkt. No. 27 at 2; *see Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (Title VII and the ADEA do not impose individual liability on employees); *see also Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1038 (2006) ("individual defendants cannot be held personally liable for violations of the ADA"). Consequently, the individual defendants are dismissed with prejudice.

# BACKGROUND

As alleged in the complaint, Rona Young was hired as a Staff Marketing Specialist by the Peralta Community College District ("PCCD") in 1994 and promoted to Public Information Officer at Merritt College (which is within the PCCD) one year later. Dkt. No. 1 at 4. She remained in that position for fifteen years. *Id.*

While working at Merritt College on August 25, 2009, Young injured her right knee and back. *Id.* at 4, Ex. G. As a result of the injury, she eventually received a total knee replacement on May 4, 2010. *Id.* at 4. After her injury but before the surgery, Young's supervisor -- Dr. Robert Adams (President of Merritt College) -- agreed to allow Young to work from home and come onto campus as necessary. *Id.* On January 3, 2010, when walking became too difficult, Dr. Jacob Rosenberg, Young's treating physician, suggested to PCCD that Young be accommodated with a motorized wheelchair or placed on Temporary Total Disability ("TTD") if she could not be properly accommodated. *Id.* at 4-5, Ex. G. On January 14, 2010, because the use of a motorized wheelchair was deemed "hazardous," the request was denied. *Id.* Young was placed on industrial leave and continued to receive her full salary. *Id.* On March 2, 2010, Dr. Rosenberg again requested a wheelchair accommodation or, in the alternative, extended TTD. *Id.* The accommodation request was again denied, and Young's TTD was continued. *Id.*

On April 29, 2010, shortly before the May 4, 2010 surgery, Young's treating physician notified Dr. Adams that her post-operative recovery could take up to three or four months. *Id.* at 4, Ex. G. On May 7, 2010, three days after the surgery, Dr. Adams told Young that he "had decided to eliminate [her] position" and transfer her. *Id.* at 4. Young alleges that PCCD eliminated her Merritt College position because of her disability and because she "had suffered multiple bodily injuries over the fifteen years" she worked for PCCD. *Id.* at 7.

On May 28, 2010, Young received a layoff notice; she was given the option of being reassigned to her same position at the College of Alameda or being placed on a reemployment list. *Id.* at 5-6, Ex. G. She chose the former, and was transferred on August 15, 2010. *Id.* at Ex. G. Dr. Jannett Jackson, President of the College of Alameda, agreed to allow Young to use a motorized wheelchair. *Id.* at 8. But according to Young, she was never told that she would be

1   accommodated. *Id.* Instead, she claims that she only discovered this fact four years later, in
2   November 2014, through a FOIA request. *Id.* Young contends that as a result of this omission,
3   she was forced to retire on November 10, 2010. *Id.*

4   Young filed a complaint with the California Department of Fair Employment and Housing
5   ("DFEH") and the Equal Employment Opportunity Commission ("EEOC") on May 16, 2011. *Id.*
6   at 6, Ex. G. On June 6, 2010, the Equal Employment Opportunity Commission ("EEOC")
7   informed Young that it, and not the DFEH, would process her complaint. *Id.* The EEOC issued a
8   right-to-sue letter on August 29, 2014. Dkt. No. 27, Ex. A. Plaintiff filed suit in this Court on
9   December 3, 2014, alleging violations of the Americans with Disability Act ("ADA"), the Age
10  Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964. Dkt.
11  No. 1.

## DISCUSSION

A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the facts, as alleged in the complaint, are not sufficient to make out a legal claim. *See SmileCare Dental Group v. Delta Dental Plan of Calif., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). All material allegations of the complaint are taken as true and considered in the light most favorable to the nonmoving party. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When a court dismisses for failure to state a claim pursuant to Rule 12(b)(6), it should normally grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

### I.   ADMINISTRATIVE EXHAUSTION

In addition to an ADA claim, plaintiff's complaint also attempts to state violations of Title VII and the ADEA. Title VII prohibits employment discrimination on the basis of race, color, religion, sex or national origin, while the ADEA prohibits employment discrimination against individuals between the ages of 40 and 70. *See* 42 U.S.C. § 2000e-2; 29 U.S.C. § 613(a).

3

As an initial matter, the Court notes that the complaint is bereft of facts showing discrimination on any of the grounds these statutes address. The complaint alleges facts supporting disability discrimination alone. This is also true for Young's administrative charge with the DFEH.

Mainly for the sake of completeness, then, if nothing else, the Court will address whether it has jurisdiction over plaintiff's ADEA and Title VII claims. To establish federal subject matter jurisdiction, a plaintiff asserting workplace discrimination must exhaust the remedies available through the EEOC. *See Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990); *see also Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002) ("a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim"); *Sanchez v. Pac. Powder Co.*, 147 F.3d 1097, 1099 (9th Cir. 1998) (same for ADEA claims). This requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (citations omitted). A plaintiff satisfies the exhaustion requirement if the civil claim is within the scope of the actual or likely EEOC charge and investigation. 42 U.S.C. § 2000e–5(b), (c), (d), (e), f(1). The Court cannot consider allegations of discrimination not included in the administrative charge unless the new claims are "like or reasonably related to the allegations contained in the EEOC charge." *B.K.B.*, 276 F.3d at 1100 (citations omitted).

In the administrative charge, Young only identified "disability" as the basis of the alleged discrimination. Dkt. No. 1, Ex. G. She did not check the boxes marked "age," "sex," "race," or any other box. *Id.* The "Particulars" section of her Charge reads in its entirety:

> I.   I was denied a reasonable accommodation in January 2010 and constructively terminated on May 7, 2010 which forced me to retire on November 10, 2010. I was hired as a Public Information Officer in February 1994 and earning $5,600 a month.
>
> II.   Mr. Greg Valentine, Risk Manager, told me that the reasonable accommodation (the ability to use a motorized wheelchair at work) was denied by Dr. Robert Adams, President of Merritt College, Karen Ulrich, Human Resources Manager and himself, Greg Valentine.

4

> III. I believe that I was denied a reasonable accommodation, and constructively terminated because of my disability (spine, shoulder and hands) for the following reasons:
>
> A. On May 7, 2010, I was denied the ability to use a wheelchair at work. My doctor's note dated October 2010 indicating my ability to go back to work with a reasonable accommodation (the use of a motorized wheelchair) was ignored.
>
> B. The denial of my request for a reasonable accommodation forced me to constructively terminate my employment and forced me to take my retirement on November 10, 2010.
>
> C. I could have performed the essential job functions with this minimal accommodation.

*Id.*

These allegations could not reasonably have been expected to trigger an investigation of any type of discrimination other than disability discrimination, and they do not provide notice to defendants of any other claim. Even construing the administrative charge "with utmost liberality," as the Court is required to do, plaintiff's charge was narrow in scope, focusing exclusively on disability discrimination. *B.K.B.*, 276 F.3d at 1100 (quotations and citation omitted). She brought the claim because she was denied a disability accommodation -- the ability to use a motorized wheelchair at work -- and explicitly states that she was "denied [this] reasonable accommodation, and constructively terminated because of [her] disability (spine, should and hands)." Dkt. No. 1, Ex. G. As the defendants note, "[t]he allegations in Plaintiff's DFEH complaint pertain only to discrete acts specifically related to the purported denial of requests for [disability] accommodation." Dkt. No. 18 at 7-8. The sole focus of the claim and investigation is also clear throughout the EEOC investigator's notes. *See* Dkt. No. 1, Ex. G. Nowhere does plaintiff allege facts suggesting discriminatory conduct for any reason other than her disability; she includes no allegations or facts suggesting that she was discriminated against because of her race, color, religion, sex, national origin or age, the classes protected by Title VII and the ADEA. Consequently, the Court finds that plaintiff did not exhaust her Title VII or ADEA claims at the administrative level, and to the extent they are brought in her complaint, they are dismissed with prejudice for lack of subject matter jurisdiction.

5

## II. STATUTE OF LIMITATIONS

Defendants contend that plaintiff's claims should be dismissed with prejudice because they are untimely. The federal limitations period for bringing an ADA claim -- plaintiff's sole remaining claim -- is 90 days from receipt of a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e–5(f)(l); *see Stiefel v. Bechtel Corp.*, 624 F.3d 1240, 1245 (9th Cir. 2010). This ninety-day filing period acts as a statute of limitations on an ADA claim. *Stiefel*, 624 F.3d at 1245. The start of the limitations period is measured from the date on which a right-to-sue notice letter arrived at the claimant's address of record. *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007). "Where that date is known, we will deem the claimant to have received notice on that date, regardless of whether the claimant personally saw the right-to-sue letter." *Id.* Where the date of actual receipt is unknown, the court will presume that the notice arrived at the claimant's address three days after it was mailed. *Id.* at 1122, 1125.

According to the plaintiff, she received the notice on September 4, 2014. Dkt. No. 27 at 3. Consequently, she was required to commence this action by December 3, 2014, 90 days after she received the notice. The action was filed that day, and is therefore timely.

Defendants ask the Court to presume that the plaintiff received the notice on September 1, 2014, three days after it was sent, which would render her claims untimely. Dkt. No. 18 at 5. Not only is that presumption impossible (the United States Postal Service was closed on September 1, 2014 for Labor Day), but it applies, if at all, only "[w]here the date of actual receipt is unknown." *See* Fed. R. Civ. P. 6(a)(6)(A); *Payan*, 495 F.3d at 1122. Here, taking all allegations of material fact as true and construing them in the light most favorable to the plaintiff, the date of actual receipt -- September 4, 2014 -- is known. The presumption does not apply.

## III. MORE DEFINITE STATEMENT

Defendants seek a more definite statement under Federal Rule of Civil Procedure 12(e). Under this rule, a party may move for a more definite statement of a pleading "which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A Rule 12(e) motion is proper only where the complaint is so indefinite that the defendant cannot

1 ascertain the nature of the claim being asserted and cannot reasonably be expected to frame a proper response. *Id*.

The request is denied. Plaintiff's only remaining claim is a disability discrimination claim under the ADA against Peralta Community College District. The facts now support one claim against one defendant, which is stated with adequate clarity.

**IT IS SO ORDERED.**

Dated: August 10, 2015

_____
JAMES DONATO
United States District Judge