UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONA YOUNG,<br><br>    Plaintiff,<br><br>v.<br><br>PERALTA COMMUNITY COLLEGE DISTRICT,<br><br>    Defendant. | Case No. 14-cv-05351-JD<br><br>**ORDER RE SUMMARY JUDGMENT** |

Pro se plaintiff Rona Young sued her former employer, Peralta Community College District ("District"), for failure to provide her with reasonable accommodations after she injured her right knee. The Court previously dismissed Young's claims under the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964. The District now seeks summary judgment on her remaining disability discrimination claim under the Americans with Disabilities Act ("ADA"). The motion is granted.

**BACKGROUND**

The material facts are not meaningfully disputed. Young worked as a Public Information Officer in the District for nearly 16 years, and retired in November 2010. Dkt. No. 69-2, Exh. A at 4, 7. She has experienced a number of health challenges over the years, including physical injuries that resulted in several corrective surgeries and physical therapy, and cancer. Dkt. No. 77 (Young Decl.) ¶ 1. In these difficult times, the District accommodated Young with medical leave, modified duties, and ergonomic equipment. Dkt. No. 69-2, Exh. A at 7-9; Dkt. No. 83-1 (Williams Decl.), Exh. AA (Young Depo.) at 218:2-17, 250:13-22.

The injury at issue here happened in August 2009, when Young hurt her right knee while working at Merritt College. Dkt. No. 77 ¶¶ 13-14. In response, the President of Merritt College and Young's supervisor, Dr. Robert Adams, the District's Chancellor, and Young all agreed that

she could work from home as needed. Dkt. No. 69-2, Exh. A at 4; Dkt. No. 83-1, Exh. AA at 105:7-12, 129:4-22. In October 2009, Young submitted a note from a treating physician, Dr. Kenneth Kim, which said that "she will need provisions for a motor-powered wheelchair or provisions for her to work from home" for an additional period of time. Dkt. No. 83-1, Exh. AA at 121:17-122:6, 156:19-22; Dkt. No. 69-2, Exh. C. The District continued to allow Young to work at home, and she met weekly with Dr. Adams throughout this time to talk "about the wheelchair; about what was going to happen to my leg." Dkt. No. 83-1, Exh. AA at 144:1-18; Dkt. No. 69-2, Exh. A at 4.

In January 2010, Young submitted a note from another treating physician, Dr. Jacob Rosenberg, advising "TTD unless accommodation met. Needs scooter or motorized wheelchair to get around campus." Dkt. No. 83-1, Exh. AA at 140:23-142:9; Dkt. No. 69-2, Exh. E. Young understood "TTD" to be shorthand for "total temporary disability," meaning that she would be out on medical leave and that she would receive her salary paid out of her sick leave, vacation or other accrued time. Dkt. No. 83-1, Exh. AA at 148:19-21, 149:17-21. The District does not disagree with this understanding. In response to Dr. Rosenberg's note, Gregory Valentine, the District's Risk Manager, told Young that the District would place her on TTD. *Id.* at 150:2-6, 167:23-168:2.

In March 2010, Young submitted two more notes from Dr. Rosenberg, which again recommended "TTD" unless Young could be accommodated with modified work and a wheelchair through May 15, 2010. *Id.* at 167:4-18, 172:5-173:10; Dkt. No. 69-2, Exhs. G, J. Valentine told Young in an email and possibly a phone call that the District preferred continued leave out of concerns about "safety hazards" and "logistical requirements" from the temporary use of a motorized wheelchair. Dkt. No. 83-1, Exh. AA at 169:4-10; Dkt. No. 69-2, Exh. H. In May 2010, Young underwent knee surgery and submitted a doctor's note stating that she would be unable to work for up to 3-4 months during recovery. Dkt. No. 83-1, Exh. AA at 175:1-8; Dkt. No. 69-2, Exh. K. The District again put her on leave during this time. Dkt. No. 83-1, Exh. AA at 175:5-7.

While all of this was happening, the District experienced significant budget cuts for the 2010-2011 year and eliminated a number of jobs. Dkt. No. 69-3 (Lengel Decl.) ¶¶ 3-4. In May

2

2010, Young's position as the Public Information Officer was eliminated at Merritt College. *Id.* ¶ 5. Because of her seniority in the District, she was offered a transfer to the same job at the College of Alameda. *Id.* She accepted the transfer. *Id.*; Dkt. No. 83-1, Exh. AA at 199:11-15, 214:4-6. Dr. Jannett Jackson, the Interim President of the College of Alameda and Young's new supervisor, called to welcome Young and told her "This is a flat campus. So you might -- so you could use a wheelchair here." Dkt. No. 83-1, Exh. AA at 212:21-213:11.

In August 2010, Young submitted a doctor's note releasing her to work with medical restrictions "to do desk work four hours per day but continue to be unable to walk around campus." *Id.* at 206:22-207:1, 209:3-9, Dkt. No. 69-2, Exh. N. The District had internal discussions about this request. Dkt. No. 83-1, Exh. AA at 217:1-9; Dkt. No. 69-2, Exh. P. Specifically, on August 31, 2010, Valentine sent an internal email with a suggested "action plan" for Young to return to work with accommodations once additional information about her work restrictions was confirmed. Dkt. No. 69-2, Exh. P. The email stated that Dr. Jackson should contact Young, although Young says that she never received notice of these conversations. *Id.*; Dkt. No. 77 ¶ 7.

On September 3, 2010, Young re-injured her knee at her doctor's office, and subsequently submitted a doctor's note stating that she should be "[o]ff work pending trial of medication . . . until October 15, 2010." Dkt. No. 83-1, Exh. AA at 219:2-5, 220:20-25, 221:25-223:16; Dkt. No. 69-2, Exh. S. The District continued her medical leave through September 30, 2010, after which Young submitted another note indicating that her status had not changed and she would be evaluated again in a month. Dkt. No. 69-2, Exh. T; Dkt. No. 83-1, Exh. AA at 223:17-21, 224:3-8 *see also* Dkt. No. 69-2, Exh. A at 5.

On November 9, 2010, Young told the District that she was electing to retire and submitted retirement paperwork. Dkt. No. 69-2, Exh. A at 4; Dkt. No. 83-1 at 228:25-229:19. Young made this decision with the help of union representatives, and states that she retired out of concern that she might lose her job and the possibility of lifetime medical benefits. Dkt. No. 83-1, Exh. AA at 228:25-230:25, 232:9-233:18, 236:12-19. She speculates that if her physician had classified her as

"permanent and stationary," she would not have been accommodated, but there is no evidence that this classification was ever made or formalized with the District. *Id.*; Dkt. No. 77 ¶ 18.

On May 16, 2011, Young filed a complaint with the California Department of Fair Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC"). Dkt. No. 1 at 6, Exh. G. The EEOC issued a right-to-sue letter on August 29, 2014. Dkt. No. 27, Exh. A. Young filed this suit on December 5, 2014. On August 10, 2015, after briefing by the parties, the Court dismissed the ADEA and Title VII claims for failure to exhaust administrative remedies. Dkt. No. 29.

Before getting to the merits, the Court notes that Young is proceeding pro se and that her complaint and summary judgment filings reflect the difficulties non-layers often encounter in dealing with complex employment laws. In the interest of justice, the Court has construed Young's claims as broadly as is fair and reasonable, and the District has taken a similar approach by construing Young's complaint to state several different grounds for relief under the ADA, even though some of them are not clearly articulated. It seeks summary judgment on the complaint as a whole. Dkt. No. 69.

Young has submitted hundreds of pages of exhibits, but does not cite to any of these materials in her opposition brief. Dkt. No. 78. She directs the Court to her seven-page declaration, with the implicit invitation that the Court undertake the burden of finding supporting evidence. *Id.* at 3-4. While the Court has liberally construed Young's claims and arguments, it will not "scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation omitted), or accept wholly conclusory statements as true, *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). These rules apply to pro se plaintiffs as they do to parties represented by attorneys. *See Horob v. McCone Cty.*, 507 F. App'x 679, at *1 (9th Cir. 2013); *Genevier v. United States*, 357 F. App'x 847, at *1 (9th Cir. 2009).

**DISCUSSION**

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish a prima facie case of disability

4

discrimination, an employee must show she (1) is disabled, (2) is qualified, and (3) suffered an adverse employment action because of her disability. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001); *see also Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). Under the ADA, the failure to provide a reasonable accommodation to an otherwise qualified disabled employee constitutes an adverse employment action. *See* 42 U.S.C. § 12112(b)(5)(A); *Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1232 (9th Cir. 2003) ("On the face of the ADA, failure to provide reasonable accommodation to 'an otherwise qualified individual with a disability' constitutes discrimination.").

Discrimination claims under the ADA are subject to the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). Under the *McDonnell Douglas* framework, an employee challenging an adverse employment action has the initial burden of establishing a prima facie case of discrimination. *Curley*, 772 F.3d at 632. The burden then shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer does so, the burden shifts back to the employee to prove that the reason was pretextual. *Id.* For discrimination claims based on a failure to accommodate, once a plaintiff has established a prima facie case, the burden shifts to the defendant to show that making a reasonable accommodation would cause it undue hardship. *See Loranzo v. County of Santa Clara*, No. 14-cv-02992-EJD, 2017 WL 945025, at *5 (N.D. Cal. Jan. 13, 2017).

## I. ACCOMMODATION AND INTERACTIVE PROCESS

Young contends that she was denied reasonable accommodations, including the use of a wheelchair at work. Dkt. No. 78 at 1. She alleges occasions in October 2009, January 2010, and March 2010 on which a wheelchair request was purportedly denied. *Id.*[1]

The District's main response is that these alleged incidents are time-barred. Dkt. No. 83 at 7. That is correct. Before filing a suit under the ADA, a plaintiff "must file a charge within the

---

[1] The District also addresses an alleged failure to accommodate in 2008, but Young does not appear to have raised that issue. *See* Dkt. No. 77 ¶ 16. In any event, as discussed below, it is time-barred.

5

statutory time period and serve notice upon the person against whom the charge is made." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Young's charge was simultaneously filed with the EEOC and DFEH on May 16, 2011, and so the conduct she challenged had to have occurred within 300 days of the filing date, which was July 20, 2010. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a). All of the alleged accommodation failures pre-date July 20, 2010, and consequently are untimely.

Young does not dispute this time bar. Even if Young had made a convincing argument against it, which is not the case, the record amply demonstrates that she was provided a reasonable accommodation on each occasion. Under the ADA, "[a]n employer is not obligated to provide an employee the accommodation [she] requests or prefers, the employer need only provide some reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (internal quotation omitted). While the ADA does not define the term "reasonable accommodation" with much precision, *see* 42 U.S.C. § 12111(9), the Ninth Circuit has held that a "leave of absence for medical treatment may be a reasonable accommodation under the ADA" where it would "permit [an employee], upon [her] return, to perform the essential functions of [her] job." *Humphrey v. Mem. Hosps. Ass'n*, 239 F.3d 1128, 1135-36 (9th Cir. 2001); *see also Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) ("Unpaid medical leave may be a reasonable accommodation under the ADA."); *Dark v. Curry Cty.*, 451 F.3d 1078, 1090 (9th Cir. 2006) (a reasonable accommodation "could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment") (quotation omitted).

It is undisputed that Young was allowed to work from home before January 2010 and to remain on medical leave after that, as her doctors' notes requested. Dkt. No. 69-2, Exhs. C, E, G, J. Each note indicated that Young's medical status was considered temporary and proposed leave as an option. *See id.* Young speculates that she would not have been accommodated if her doctor changed her status to "permanent and stationary," but there is no evidence that she would have been fired or otherwise been unable to perform her job after she returned from TTD. The reasonableness of the medical leave accommodation is underscored by the District's evidence that, even when Young decided to retire, she still had 180.5 hours of banked time and could have

6

1 remained on extended leave through February 2011. Dkt. No. 83 at 13 (citing Dkt. No. 83-1, Exh. DD). The Court finds that the accommodations of working at home and medical leave, renewed as needed and in direct accordance with her doctors' notes, were reasonable, and summary judgment is granted to the District on the failure to accommodate claim.

To the extent Young argues that the District failed to engage in an interactive process, that claim also fails. Under the ADA, once a qualified individual requests an accommodation, an employer is required to "engage in an interactive process with [her] to determine the appropriate reasonable accommodation." *Zivkovic*, 302 F.3d at 1089. The interactive process "requires: (1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." *U.S. E.E.O.C. v. UPS Supply Chain Sols.*, 620 F.3d 1103, 1110 (9th Cir. 2010) (internal quotation omitted).

Young appears to suggest that the District did not engage in this interactive process because Valentine communicated with her by telephone once and twice by email from the date of her injury to her retirement. *See* Dkt. No. 77 ¶ 5. But the interactive process is a means to an end, and a defendant is not liable under the ADA for failure to engage in the interactive process if the plaintiff obtained a reasonable accommodation. *See Ravel v. Hewlett-Packard Enter., Inc.*, ___ F. Supp. 3d ___, 2017 WL 118009, at *8 (E.D. Cal. Jan. 11, 2017); *Tannlund-McCoy v. Golden Gate Bridge, Highway and Transp. Dist.*, 02-cv-02624-WHA, 2003 WL 21838378, at *8 (N.D. Cal. Jul. 30, 2003). Because Young was reasonably accommodated for each request challenged here, there is no alternative liability for failure to engage, regardless of how few communications Young had with Valentine or how many she would have desired.

## II. DISPARATE TREATMENT

Young does not make a prima facie claim for disparate treatment based on the termination of her Merritt College position in May 2010. As a threshold issue, an adverse employment action must be one that "materially affect[s] the compensation, terms, conditions, or privileges of ... employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (quotation omitted). The undisputed evidence shows that Young was offered a transfer to another campus with the

7

same position, title, classification, rate of pay, rights to benefits, and job duties and responsibilities. *See* Dkt. No. 69 at 21 (citing Dkt. No. 69-3 ¶ 5; Dkt. No. 69-2, Exh. M). In addition, she was welcomed to the campus by her supervisor, and expressly told that her new location could accommodate a wheelchair. Dkt. No. 83-1, Exh. AA at 213:8-11. Because Young has failed to produce any evidence, or even an explanation, showing that the transfer materially affected her employment, the District is entitled to summary judgment. *Jefferson v. Time Warner Cable Enters. LLC*, 584 F. App'x 520, 522 (9th Cir. 2014).

## III. CONSTRUCTIVE DISCHARGE

Constructive discharge occurs where an employee is not fired but "resigns in the face of intolerable discrimination." *See Green v. Brennan*, 136 S. Ct. 1769, 1774 (2016). "[C]onstructive discharge occurs when, looking at the totality of the circumstances, a reasonable person in [the employee's] position would have felt that [she] was forced to quit because of intolerable and discriminatory working conditions." *Thomas v. Douglas*, 877 F.2d 1428, 1434 (9th Cir. 1989) (internal quotation omitted). Young's wrongful constructive discharge claim is based on the District's alleged failure to provide reasonable accommodations and engage in the interactive process. *See* Dkt. No. 78. Because the Court has already found that summary judgment is warranted on those issues, and Young offers no additional evidence of discriminatory behavior to show that a reasonable person would have felt compelled to quit, summary judgment is granted for the District.

## IV. RETALIATION

Young's opposition papers raise, for the first time, the suggestion of a claim for retaliation. Dkt. No. 77 ¶¶ 3, 8-11, 15; Dkt. No. 77-4 (Marro Decl.) ¶¶ 5, 11. A good argument can be made that this suggestion should not be entertained at this late date, particularly since Young did not ask to amend her complaint to state a retaliation claim and the motion to dismiss order clearly provided that the surviving claims were limited to disability discrimination. *See* Dkt. No. 83 at 14. Nevertheless, for the sake of resolving all the potential issues in this pro se action, the Court will address the alleged retaliation.

1 Young believes that the District "actively sought to eliminate her" for disability issues starting in 2003. Dkt. No. 77 ¶ 8. She contends that Dr. Adams "began a systematic process of eliminating" her after her injury in 2007. *Id.* ¶¶ 9-10. Unrelated to her disability or injuries, she believes that the District also retaliated against her when she joined with other Public Information Officers to file a class grievance about new work assignments in 2005. *Id.* ¶ 15; *see also* Dkt. No. 77-4 ¶¶ 5, 11.

As an initial matter, Young's retaliation theory is likely time-barred and subject to dismissal for failure to exhaust. *See* Dkt. No. 29 (dismissal order); 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a); Dkt. No. 1, Exh. G (Young's administrative charge). It also lacks any evidentiary support in the record. The Title VII burden-shifting framework under *McDonnell Douglas* applies to retaliation claims under the ADA. *Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003). To make a prima facie case of retaliation under Title VII, a plaintiff must show "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223 (9th Cir. 2012). Although the anti-retaliation provisions prohibit a broader range of adverse actions than the discrimination provisions, the adverse action must nevertheless "deter a reasonable employee from complaining about discrimination," to amount to retaliation. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006).

Young has not raised a genuine dispute of material fact on retaliation. The District has proffered undisputed evidence showing that it eliminated 20 positions District-wide, including the Public Information Officer positions at Merritt College and Laney College, in response to severe budget cuts, *see* Dkt. No. 69 at 7; Dkt. No. 83 at 11, and that Dr. Adams and Valentine did not participate in the Board of Trustee's vote approving the eliminations, Dkt. No. 69-2, Exh. M at 4. Young's belief that there was an active plan to eliminate her position, either in response to past injuries or other alleged concerns, is wholly speculative and without foundation in fact, and is patently insufficient to show that the District's actions were pretextual or otherwise improper under the ADA or Title VII. *See Curley*, 772 F.3d at 632-34.

## CONCLUSION

To the extent that the Court relied on evidence to which the parties filed objections, those objections are overruled. Summary judgment is granted in favor of the District and judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: June 7, 2017

JAMES DONATO
United States District Judge